720 P.2d 186

Harvey GREEN and Janice Green,
Plaintiffs-Appellants,

v.

BANNOCK PAVING CO.; Western Construction Co.; and Allied Paving Corp., Defendants-Respondents,

and

State of Idaho, Department of Transportation Division of Highways; Caribou County, a political subdivision of the State of Idaho; Chester Cecil Eason; Alex K. Ferrenberg and Gloria Ferrenberg; John Doe I, John Doe II and John Doe III, Defendants.

No. 16038.

Supreme Court of Idaho.

May 29, 1986.

4

Alan E. Barber, of Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, for plaintiffs-appellants.

Gary L. Cooper, of Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendants-respondents.

DONALDSON, Chief Justice.

In the early morning hours of November 22, 1978, a diesel tractor-trailer rig missed the entrance to a detour on U.S. Highway 30, approximately 5 miles west of Soda Springs, Idaho, and crashed into a concrete porta-rail which was erected to block access to a newly constructed portion of the highway. Appellant Harvey Green was injured in the accident.

Green and Chester Eason were employed by Alex and Gloria Ferrenberg as long-haul truck drivers. The pair had completed a trip to Denver, Colorado and were returning to Nyssa, Oregon when the accident occurred. At the time of the accident, Eason was driving the truck while Green slept in the "sleeper cab."

On November 18, 1980, Green initiated the present action seeking damages for personal injuries and economic losses against the State of Idaho, Caribou County, Chester Eason, Alex and Gloria Ferrenberg and three John Does. Also named as defendants were the three companies involved in construction work on Highway 30: Western Construction Company (Western), Bannock Paving Company (Bannock), and Allied Paving Corporation (Allied). Green alleged, first, that the warning signs and barricades marking the detour were improperly constructed and maintained and, second, that Eason was operating the vehicle negligently when the accident occurred.

On August 25, 1981, Caribou County was voluntarily dismissed as a defendant. Thereafter, the State of Idaho and the three construction companies moved for summary judgment. On January 14, 1982, Judge Rasmussen granted summary judgment to Allied but denied it to the State of Idaho and the two other construction companies. Prior to trial, on September 4, 1984, Bannock again moved for summary judgment, this time before Judge Smith. The motion was denied, and the case proceeded to trial.

A jury trial commenced on September 17, 1984, before Judge Smith. Neither Eason nor the Ferrenbergs appeared. On November 17, 1984, the jury returned a special verdict assessing the total amount of damages sustained by the Greens at $217,565.00 and apportioning the relative degree of liability as follows:

| | | |
|---|---|---|
| 1. | Harvey Green | 15% |
| 2. | State of Idaho | 40% |
| 3. | Bannock Paving | 0% |
| 4. | Western Construction | 0% |
| 5. | Chester Cecil Eason | 35% |
| 6. | Ferrenbergs | 5% |
| 7. | Non-party vandals who may have damaged the warning sign | 5% |
| | TOTAL | 100% |

Judgment was entered against the State of Idaho for the sum of $87,026.00 and against Chester Eason for $76,147.75 on November 27, 1984. On November 30, the Greens moved for judgment notwithstanding the verdict asserting that Western and Bannock were equally liable with the State of Idaho. The motion was denied. The Greens then moved for reconsideration which motion was also denied.

On April 9, 1985, the court entered an amended judgment increasing the award against the State of Idaho to $100,000.00. The Greens filed their Notice of Appeal on May 21, 1985. On July 17, the Greens and the State of Idaho filed a Satisfaction of Amended Judgment and entered into a stipulation and order for the dismissal of the State with prejudice.

On appeal, the Greens allege that the trial court erred in the following respects: First, in granting summary judgment to

Allied; second, in instructing the jury on the construction companies' duty to the traveling public; and, finally, in refusing to impute the State of Idaho's negligence to the construction companies as a matter of law. We will address each issue in the order stated.

## I

### Summary Judgment

■ The Greens first allege that the trial court erred in granting summary judgment to Allied. Summary judgment is appropriate only where the pleadings, depositions, and affidavits taken together demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). When the district court granted summary judgment to Allied, there was simply no evidence to indicate that Allied's work on the detour contributed, in any way, to the disputed accident.

The Greens alleged that Allied Paving, along with the other named defendants,

"Failed to properly maintain the road signs and other markers on said highway and failed to construct and maintain an appropriate warning system to advise vehicle operators of hazardous conditions then and there existing at the scene of the accident and further failed to properly construct and make noticeable barricades and other facilities to warn of the presence of said dangers."

However, it was uncontroverted that Allied's involvement in the construction of the detour was limited to paving the detour during the last two weeks of September. There was no allegation that the paving contributed to the accident. Allied was not involved in the design, maintenance or placement of the signs and barricades which were alleged to have caused the accident. When the accident occurred, Allied was off the project and its work had been accepted by the State.

Although we recognize that motions for summary judgment should be granted with caution, *Bailey v. Ness*, 109 Idaho 495, 497,

708 P.2d 900, 902 (1985), the burden is, nevertheless, on the party opposing the motion to set forth specific facts showing there is a genuine issue for trial. I.R.C.P. 56(e). In the instant case, there was simply no evidence presented to create a disputed issue of material fact that the construction of the detour was a proximate cause of the Greens' injuries. Accordingly, the district court did not err in granting summary judgment to Allied.

## II

### The Construction Contractors' Duty

The Greens next allege that the trial court erred in refusing to instruct the jury that Bannock and Western had a primary, non-delegable duty to maintain U.S. Highway 30 in a safe condition for travelers during the entire construction period. The trial court instructed the jury, in Instruction No. 3, that the construction companies had a general duty to use ordinary care under all the facts and circumstances of the case. While the contract between the State and the companies might augment that duty, the court instructed, the provisions of the contract could not set forth a standard of care different from the duty to use ordinary care. The court further instructed the jury, in Instruction No. 12, that because a public works contractor is required to follow the plans and specifications submitted by the State, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of work where the contractor performed the work in strict accordance with those plans and specifications. The Greens contend that Instruction No. 12 is an incorrect statement of Idaho law and that the two instructions, taken together, created an insoluble conflict mandating a reversal of the jury verdict of no negligence on the part of Bannock and Western.

■ Contrary to the Greens' contention, Instruction No. 12 is a correct statement of Idaho law. As this Court has stated on several occasions, the rule in Idaho is that where a public works contractor has per-

formed its work in accordance with the plans and specifications provided by the state, the contractor is not liable for any damages resulting therefrom. *Elce v. State*, 110 Idaho 361, 363, 716 P.2d 505, 507, (1986); *Black v. Peter Kiewit Sons Co.*, 94 Idaho 755, 757, 497 P.2d 1056, 1058 (1972).

> "A contractor is required to follow the plans and specifications and when he does so, he cannot be held to guarantee that the work performed as required by his contract will be free from defects, or withstand the action of the elements, or that the completed job will accomplish the purpose intended. He is only responsible for improper workmanship or other faults, or defects resulting from his failure to perform." *Black, supra, quoting Puget Sound Nat'l Bank v. C.B. Lauch Constr. Co.*, 73 Idaho 68, 77, 245 P.2d 800, 805 (1952).

The trial court correctly instructed the jury of the general rule that a highway contractor has a duty to use ordinary care in the performance of the contract. *See Pittman v. Sather*, 68 Idaho 29, 38, 188 P.2d 600, 609 (1947). It also correctly instructed the jury of the more specific rule, cited above, that a public works contractor, who has performed its work in accordance with the State's plans and specifications, is not liable for any damages resulting therefrom. That instruction was appropriate because the facts of this case reveal that the State of Idaho had designed and staked the detour in question. Bannock contracted with the State to provide the subgrade for the new highway. Its only obligation in regard to the detour was to grade it. The evidence at trial established that Bannock had finished its work on the segment of the roadway where the detour was located, and that the State had accepted that work approximately one month prior to the accident. Allied was hired to pave the detour, and Western was responsible for obliterating it after the new highway was completed. The detour was already in existence when Western began its work on the portion of the highway where the detour was situated.

Because the evidence established that Bannock's work on the detour was completed and accepted prior to the accident, Bannock was entitled to an instruction that it was not liable for any damage resulting from work it performed in strict accordance with the plans and specifications provided by the State. Accordingly, we hold that the trial court did not err in so instructing the jury.

### III

### Imputed Liability

Finally, the Greens contend that the State's negligence must, as a matter of law, be imputed to Bannock and Western. We disagree. This was not a defective road surface case. The Greens did not allege that the excavation of the detour was performed negligently, that the pavement was applied negligently, or that the road surface was improperly maintained. Rather, the defects complained of at trial were inadequate signing, inadequate snow removal on the signs, inadequate repair of a vandal's damage to a flashing light, and inappropriate use of concrete porta-rail at the entrance to and along the detour. The evidence established that the State of Idaho designed and staked the detour. The evidence further established that the State designed the signing, placed the signs and maintained the signs. It was the State which decided to use porta-rail to barricade the detour, where to place it, and how long to keep it there.

Bannock had finished its work on the segment of roadway where the detour was located long before the accident occurred. Western did not begin its work until after the detour was constructed, signed, barricaded and paved. These facts were certainly sufficient to support the jury's finding of independent liability on the part of the State.

The Greens allege that the State's liability should be imputed to the contractors. However, they fail to cite us any authority for this proposition. The Greens'

argument seems to have its roots in a misapprehension of the doctrine of respondeat superior. Under that doctrine, an employer may be held liable for the negligence of its employees acting within the scope of their employment. *See generally,* W. Keeton, Prosser and Keeton on the Law of Torts, § 69 (1984). Had Bannock and Western been found negligent in the present case, the Greens might have argued, under the theory of respondeat superior, that their negligence should be imputed upward to the State of Idaho. We are aware of no theory, however, under which the liability of the State may be imputed downward to an independent contractor. We therefore hold that the trial court did not err in refusing to impute the State's negligence to Bannock and Western.

The decision of the district court is affirmed.

Costs to respondent.

No attorney fees on appeal.

SHEPARD and BISTLINE, JJ., and McFADDEN and WALTERS, JJ. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

I disagree with the majority's conclusion that Instruction No. 12 was properly given in the instant context. That instruction could have misled the jury to believe that because the state had planned the detour, the defendant construction companies while on the job had no duty to keep it in safe condition. However, because two of those companies were no longer on the job, their duty had terminated. The third had no direct involvement in the construction of the detour; thus, it never had the duty to begin with. Accordingly, I concur in the result of part II of the majority's opinion, and fully concur in the remainder of its opinion.

Instruction No. 12 provided:

A highway contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work where the contractor performed the work in strict accordance with the terms of the contract, or performed the work according to the plan and specifications furnished by the State. Because a highway contractor is required to follow the plans and specifications, that contractor cannot be held to guarantee that the work performed as required by the contract will be free from defects, or withstand the action of the elements, or that the completed job will accomplish the purposes intended. R., Vol. II, p. 264.

As the majority notes, this properly states the law as established in *Black v. Peter Kiewit Sons Co.,* 94 Idaho 755, 497 P.2d 1056 (1972), and *Elce v. State,* 110 Idaho 361, 716 P.2d 505 (Sup.Ct.1986). To prove this point, the majority quotes from the former:

"A contractor is required to follow the plans and specifications and when he does so, he cannot be held to guarantee that the work performed as required by his contract will be free from defects, or withstand the action of the elements, or that the complete job will accomplish the purpose intended. He is only responsible for improper workmanship or other faults, or defects resulting from his failure to perform." *Black, supra,* 94 Idaho at 575, 497 P.2d at 1058, *quoting Puget Sound National Bank v. C.B. Lauch Construction Co.,* 73 Idaho 68, 77, 245 P.2d 800, 805 (1952).

This quote demonstrates that Instruction No. 12 correctly states the law; it also demonstrates that the instruction *had no application to the facts of this case.*

This case did *not* involve allegations that the surface was defective, or failed to withstand the elements, or that the completed job did not accomplish its intended purpose—the sort of allegation Instruction No. 12 speaks to. *Only such allegations would warrant the issuing of Instruction No. 12.* To the contrary, the Greens alleged inadequate signing, inadequate snow removal from signs, inadequate repair of vandals' damage to a flashing light, and inappropriate use of portarails at the entrance and along the detour. As long as

the construction companies *remained on the job,* they had a primary and nondelegable duty to maintain it in a safe condition. *See generally* 40 C.J.S. *Highways* § 252(b). As the Minnesota Court observed:

> The fact that the contract gives certain assignments to the State involving warning signs, traffic control signs, and barricades does not eliminate the responsibilities of the contractor for the safety of the general public. ... *[T]he State and the private road contractor possess a mutual duty to protect the motoring public from dangerous conditions in the construction zone. Cummins v. Rachner,* 257 N.W.2d 808, 813 (Minn. 1977) (emphasis added).

This nondelegable duty was recognized in Instruction No. 3. However, the jury may have inferred from Instruction No. 12 that as long as the construction companies followed the state's plans and specifications, they could not be held liable. Consequently, the inappropriate issuance of Instruction No. 12 may have led the jury to absolve the construction companies of their nondelegable duty.

Nevertheless, the error was harmless. As the record reveals, two of the construction companies, Allied and Bannock, were *off the job at the time of the accident.* Consequently, their duty had terminated. The third, Western, was the prime contractor for the realignment of the highway, but was not directly involved in the construction of the detour. As noted in the plaintiffs' initial brief: "The detour was not part of any company's original contract. It was installed under an Avoid Verbal Order (AVO), an addition made to *Bannock Paving's contract* at its request. The State of Idaho staked out the detour, *Bannock graded it, and Allied paved it.*" Appellants' Brief, p. 5 (citations omitted) (emphasis added). Because Western was not directly involved, it had no duty to maintain the detour in a safe condition.

In sum, any error in issuing Instruction No. 12 was harmless, because it negated a duty that Allied and Bannock no longer bore at the time of the accident, and West-

ern never bore. Thus, there is no occasion to reverse the district court's denial of plaintiffs' motion for judgment n.o.v.