Ronald E. NIELSEN,
Plaintiff–Appellant,

v.

**GEORGE DIAMOND VOGEL PAINT COMPANY, Defendant–Appellee,**

and

United Coatings, Inc., et al.,
Defendants.

No. 87–4351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided Jan. 9, 1990.

Albert J. Bannon, Portland, Or., for plaintiff-appellant.

Gerald E. Montgomery, Portland, Or., and Patrick K. Shine, Spokane, Wash., for defendant-appellee.

Before SCHROEDER, POOLE and NELSON, Circuit Judges.

SCHROEDER, Circuit Judge:

1. INTRODUCTION

This is a diversity action brought by Ronald Nielsen, a former civilian employee of the United States government's Army Corps of Engineers. Nielsen's job for many years was to paint a dam in Idaho. Nielsen sued the manufacturers of paint which he used in the course of his job, alleging that it led to permanent brain damage. The district court granted summary judgment in favor of the defendants, agreeing that any defects in the design of the paint and in warnings on its use were attributable to government specifications, and that under Idaho law the manufacturer would not be liable for damages on either negligence or strict liability principles.

On appeal, the defendants also contend that as a result of the Supreme Court's intervening decision in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), they are entitled to summary judgment as a matter of federal law by virtue of the defendants' contractual relationship to the United States government, which required them to manufacture the paint used at Nielsen's work site in accordance with government-approved specifications. We do not read *Boyle* to establish the broad immunity for all government procurement contractors urged by the defendants, but we affirm the summary judgment in favor of defendants on most of plaintiff's claims on the basis of Idaho state law.

II. FACTS

Ronald Nielsen was employed by the United States Army Corps of Engineers as a painter from 1975 to 1983. Nielsen worked almost exclusively at the Albeni Falls Dam in Idaho. In September, 1980, Nielsen began experiencing severe headaches, chest pain, disorientation and nausea. He related these symptoms to his exposure to paint products at the Albeni work site. Nielsen also began suffering bouts of depression and changes in personality manifested in outbursts of hypersensitivity, anger, and frustration. Nielsen ultimately quit his job and filed a successful claim under the Federal Employee Compensation Act. His symptoms were diagnosed as solvent-induced brain damage resulting from the inhalation of toxic paint fumes. Nielsen then brought this action against the manufacturers of the paint that he used at the Albeni Falls Dam Project.

Nielsen's complaint alleged that the defendants were liable in strict liability for manufacturing defective and unreasonably dangerous products, and that the products did not contain adequate warnings of the dangers involved in their use or instructions on how to use them safely. The complaint also alleged that the defendants were negligent in producing paints which were dangerous to the ultimate user when safer compositions were available.

The United States District Court for the Eastern District of Washington assumed jurisdiction over Nielsen's products liability action on the basis of diversity of citizenship. 28 U.S.C. § 1332 (1982). The district court determined that the substantive law of Idaho applied because the plaintiff was injured while working in Idaho. The defendant paint manufacturers moved for summary judgment on the grounds that the suit was barred because the defendants were following specifications prepared by the government, and there were no defects in the specifications of which they should reasonably have been aware.

The district court granted summary judgment for the defendants on October 16, 1987. The district court held that the defendants were entitled to summary judgment because the "contract specifications" defense would be available under Idaho law to a contractor who manufactured paint in accordance with government specifications.

The court held that the evidence presented by the defendants was sufficient to raise the inference that the United States government had provided reasonably precise specifications to the defendants, and that the defendants did not possess greater expertise than the government with regard to the paint products, and thus were entitled to rely on the government's specifications. There was no contrary showing by the plaintiff. The district court held that a contract specifications defense was available under Idaho law to bar both plaintiff's negligence and strict liability claims for defective design of the paint.

With regard to Nielsen's claim that the defendants were liable for failure to warn of inherent dangers in the products, the court held that the defendants' evidence showed that certain warnings were required by the terms of the contracts to be included in the labels on the paint containers. The court held that Nielsen had failed to come forward with evidence that the required warnings had or had not been complied with when Nielsen used the products, and that Nielsen thus failed to meet his burden of showing that warnings actually provided were inadequate. This appeal followed.

On appeal, Nielsen does not contest the district court's factual findings on the defective design claims. Rather, Nielsen argues that the district court erred in finding that the contract specifications defense was available to these defendants as a matter of Idaho law. Nielsen contends that the failure to warn claim presented triable issues of fact.

We review the district court's grant of summary judgment *de novo*. *Williams v. Edwards Apffels Coffee Co.*, 792 F.2d 1482, 1484 (9th Cir.1986). We review the district court's determination of state law *de novo*. *Yamaguchi v. State Farm Mutual Auto Ins. Co.*, 706 F.2d 940, 946 n. 5 (9th Cir. 1983); *Allen v. Greyhound Lines*, 656 F.2d 418, 421–22 (9th Cir.1981).

III. APPLICABILITY OF A GOVERNMENT CONTRACT DEFENSE UNDER FEDERAL LAW

■ At the time that the district court decided this case, the law of this circuit and others recognized a defense available to military contractors when sued for injuries suffered by military personnel and attributable to defects in products manufactured in accordance with government-approved specifications. *See, e.g., Bynum v. FMC Corp.*, 770 F.2d 556, 564–66 (5th Cir.1985); *Tillett v. J.I. Case Co.*, 756 F.2d 591, 596–97 (7th Cir.1985); *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 449 (9th Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). The defense had its origins in the judicially-created *Feres* doctrine, which was designed to protect the United States government from suits by plaintiffs injured in the course of military service. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres*, the Supreme Court decided that the provisions of the Federal Tort Claims Act did not waive the United States' sovereign immunity for actions based on injuries arising from military service.

This circuit's decision in *McKay* contains a comprehensive explanation of the background and reasons for making such a defense available to military contractors. *See McKay*, 704 F.2d at 449–50. Judge Sneed's opinion explains that the roots of the defense lie in the special need for the maintenance of military discipline and the avoidance of litigation "second-guessing" sensitive military decisions. *Id.* at 449 (citing *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977)). The opinion also explains that permitting the contractor to be held liable would undercut the effectiveness of the immunity that the *Feres* doctrine was designed to ensure, since contractors would eventually pass off the costs of such litigation to the government in its contract price. Judge Sneed stated that:

> [T]he Supreme Court emphasized in *Stencel* that the United States cannot be directly or indirectly liable to servicemen injured by defective military products. But holding the supplier liable in government contract cases without regard to the extent of government involvement in

fixing the product's design and specifications would subvert the *Feres–Stencel* rule since military suppliers, despite the government's immunity, would pass the cost of accidents off to the United States through cost overrun provisions in equipment contracts, through reflecting the price of liability insurance in the contracts, or through higher prices in later equipment sales.

*Id.* (footnote omitted)

The defendants argued in the district court that under *McKay*, they should be insulated from liability because they manufactured the product in accordance with government-approved specifications, even though the injuries were incurred by a civilian in the course of using a product that was not designed for any special military purpose. The district court properly concluded that the military contractor defense as defined in *McKay* was not applicable.

Following the district court's decision, however, and before this case was briefed on appeal, the Supreme Court decided *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). *Boyle*, like *McKay*, was an action for injuries suffered in the course of military duties and attributable to allegedly defective equipment designed pursuant to government-approved military specifications. In *Boyle*, the co-pilot of a military helicopter drowned when he could not escape from the helicopter after it crashed in the sea. *Boyle*, 108 S.Ct. at 2513. Survivors brought a diversity action against the manufacturer of the helicopter for defective design of the escape hatch, and the contractor defended on the ground that it had manufactured the equipment in accordance with the military's specifications and could not be held liable for injuries sustained by the military pilot. *Id.* The Supreme Court there reached the same legal conclusion that the Fourth Circuit had reached in the case, and that this court would have reached under *McKay*. It concluded that if the contractor established that the equipment conformed to reasonably precise specifications and that the supplier had warned of any dangers known to

the supplier, the contractor would be entitled as a matter of federal law to a military contractor defense from liability. The court said:

> We agree with the scope of displacement adopted by the Fourth Circuit here, which is also that adopted by the Ninth Circuit, *see McKay v. Rockwell Int'l Corp.*, *supra*, at 451. Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 2518.

The legal analysis underlying the Supreme Court's conclusion, however, departed sharply from that of lower courts, resulting in an alteration of the scope of the defense as it had previously been applied. *See id.* at 2513–18. Defendants now urge on appeal that under *Boyle* they are entitled to a judgment as a matter of federal, and not state law, and that we need not reach any of the appellant's contentions with regard to Idaho law.

*Boyle* has already produced a considerable wake. Several commentators have suggested, some with considerable alarm, that all United States government contractors may now automatically seek to invoke a government contractor defense. *See, e.g., Boyle*, 108 S.Ct. at 2520 (Brennan, J., dissenting); Scadron, *The New Government Contractor Defense: Will It Insulate Asbestos Manufacturers from Liability for the Harm Caused by Their Insulation Products?*, 25 Idaho L.Rev. 375, 380 (1988); 3A L. Frumer & M. Friedman, *Products Liability* § 25.04 (1989); Case Comment, *Boyle v. United Technologies Corporation: A Questionable Expansion of the Government Contract Defense*, 23 Ga.L. Rev. 227, 254 (1988). Therefore, we must examine the underlying analysis of *Boyle* with some care.

As we understand that analysis, it is directed toward deciding the extent to which federal law should displace state law with respect to the liability of a military contractor. The underlying premise in *Boyle* applies to all government contracts, and is not limited to the military context. That premise is that there is a "uniquely federal interest" in potential liabilities arising out of the performance of any government contract, regardless of its military or civilian nature, and regardless of whether it is a procurement or a construction contract. *Boyle*, 108 S.Ct. at 2514–15, (citing *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940)). The *Boyle* analysis began, but did not end, with that assumption. The Court stated that the uniquely federal interest inherent in all federal government contracts is a necessary condition for the displacement of state law, but not a sufficient condition. "Displacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law.'" *Id.* 108 S.Ct. at 2515. (citations omitted)

In defining where such a "significant conflict" exists between federal and state law, the majority focused its analysis on the military context of the case. Justice Scalia's opinion considered and rejected the *Feres* doctrine as an appropriate source and scope of such a conflict. According to *Boyle*, the *Feres* doctrine, immunizing the government from all liability for suits for service-connected injuries, would, if extended to contractors, be too broad in that it would immunize contractors from the results of their own negligence. *Id.* at 2517. At the same time, *Boyle* stated that the *Feres* doctrine's scope of immunity is in one respect too narrow, since the doctrine "covers only service-related injuries, and not injuries caused by the military to civilians...." *Id.* at 2517. The Court reasoned persuasively that the interests of the government in avoiding scrutiny of sensitive military decisions, as, for example, the design of a fighter plane—interests which led to the evolution of the *Feres* doctrine in the first instance—are the same regardless of whether the injured party in a given instance is a member of a military service, or is a civilian. *Id.*

The Court in *Boyle* therefore abandoned the *Feres* doctrine as defining the scope of the defense available to the military contractor in that case, and turned instead to the Federal Tort Claims Act. That Act, of course, waives the immunity of the United States for suits sounding in tort and generally subjects the United States to liability for negligence under the laws of the various states. But it contains an exception for "discretionary functions." *See* 28 U.S.C. § 2680(a)(1982). The discretionary functions exception has itself been the subject of considerable recent litigation. *See, e.g., Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). After determining that the design of military equipment is a "discretionary function" from which the government itself would be immune from liability, the Court concluded that a defense of similar scope should be available to a military contractor:

> It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.

*Boyle*, 108 S.Ct. at 2518.

Significantly, the reasons for shielding both the government and the contractor from liability for military equipment design are the same as those underlying the *Feres* doctrine. These are considerations peculiar to the military field. Thus, the Supreme Court in *Boyle* essentially endorsed all aspects of our earlier decision in *McKay* except the limitation of its applicability to service-connected injuries, a limitation arising from its reliance upon the *Feres* doctrine. Accordingly, the Supreme Court's decision in *Boyle* altered the scope of the so-called "military contractor defense" available as a matter of federal law in diversity actions against military contractors; it also changed the intellectual mooring of that defense from the *Feres* doctrine to the discretionary function exemption of the Federal Tort Claims Act. Yet the poli-

cy behind the defense remains rooted in considerations peculiar to the military. At least two other circuits have recognized this principle in holding that military contractors were entitled to immunity when following allegedly defective government specifications in the design of military equipment. *See Garner v. Santoro,* 865 F.2d 629, 634–36 (5th Cir.1989); *Trevino v. General Dynamics Corp.,* 865 F.2d 1474, 1483–84 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989); *Harduvel v. General Dynamics Corp.,* 878 F.2d 1311, 1315–16 (11th Cir.1989).

In this case, we deal with a civilian worker injured in the course of a civilian job involving a product designed to further civilian, rather than military, objectives. Under *Boyle,* we can find no reason to hold that application of state law would create a "significant conflict" with federal policy requiring a displacement of state law. As we read *Boyle,* it does not require that these defendants enjoy an immunity from tort liability as a matter of federal law that they did not enjoy before *Boyle.* Applying local law would not significantly interfere with any uniquely federal interest. Our decision is in accord with the only other post-*Boyle* reported decision of which we are aware that involved the procurement of nonmilitary equipment. *See In re Hawaii Federal Asbestos Cases,* 715 F.Supp. 298, 300 (D.Hawaii 1988). We therefore proceed to consider whether the district court correctly applied the law of Idaho in holding that the defendants were not liable to the plaintiff in this case.

## IV. LIABILITY FOR DESIGN DEFECTS UNDER IDAHO LAW

 The plaintiff originally filed this action against the defendants on both negligence and strict liability theories. It is undisputed that the contractor in manufacturing the paint followed the specifications prepared by the government, and hence the responsibility for any defects in those specifications is ultimately the government's. Under Idaho law it is clear that a government contractor following plans and specifications prepared by the government is not liable in negligence for injuries attrib-

utable to defects in those specifications and not reasonably known to the contractor. *See Green v. Bannock Paving Co.,* 111 Idaho 3, 720 P.2d 186, 188–89 (1986); *Black v. Peter Kiewit Sons' Co.,* 94 Idaho 755, 497 P.2d 1056 (1972).

Such a defense in negligence law is generally available to both public and private contractors. Restatement (Second) of Torts § 404 comment a (1965). *See also* Annotation, *Right of Contractor with Federal, State, or Local Public Body to Latter's Immunity from Tort Liability,* 9 A.L.R.3d 382 (1966). The defense follows from the basic negligence principle that liability flows from fault. The plaintiff has not appealed the district court's rulings with respect to the negligence claims.

The district court further ruled that plaintiff's strict liability claims were also barred under Idaho law. Nielsen appeals the dismissal of his strict liability claims, pointing out that the considerations of fault underlying the "contract specifications" defense play no role in a strict liability action. He relies upon a number of court decisions and scholarly commentators who have cogently argued that the contract specification defense applied in negligence cases should have no applicability in cases involving strict liability principles. *See Challoner v. Day & Zimmerman, Inc.,* 512 F.2d 77, 83 (5th Cir.), *vacated on other grounds,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Johnston v. United States,* 568 F.Supp. 351, 354 (D.Kan.1983); Note, *The Government Contract Defense in Strict Liability Suits for Defective Design,* 48 U.Chi.L.Rev. 1030, 1048–51 (1981); *cf.* Note, *Liability of a Manufacturer for Products Defectively Designed by the Government,* 23 B.C.L.Rev. 1025, 1032 (1982).

The Idaho Supreme Court has adopted the strict liability principles of section 402A of the Restatement (Second) of Torts in private lawsuits. *See Shields v. Morton Chemical Corp.,* 95 Idaho 674, 518 P.2d 857, 859 (1974) (adopting Restatement § 402A); *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421, 428 (1974) (strict liability applied to design defects). It has not, how-

ever, addressed the applicability of any contractor specification defense in the context of a strict liability case against either a government or a private contractor.

If the sole basis for the Idaho Supreme Court's adoption of a contract specification defense were the negligence principle that liability flows from fault, we would hold that the Idaho Supreme Court would not recognize such a defense in a strict liability case, where fault principles play no role. However, in the government contract arena, additional policy considerations come into play. Courts often absolve contractors from liability when following government specifications not only because of a lack of fault on the part of the contractors, but also because of their reluctance to impose liability upon contractors when the government itself would be immune from suit. *See, e.g., Boyle,* 108 S.Ct. at 2514–15; *Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). Courts sometimes speak of government contractors as enjoying a "shared immunity," a concept peculiar to government, as opposed to private contracts.

In Idaho, the Supreme Court has held that there is no longer sovereign immunity of the state for actions in negligence. *See Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970). That ruling is now codified by statute in the Idaho Tort Claims Act. Idaho Code §§ 6–901 to 928 (1979 & Supp.1989). Neither the Idaho Supreme Court nor the legislature, however, has authorized strict liability suits against the government. The issue is whether the Idaho Supreme Court would hold that a contractor is entitled to share the government's immunity. The Idaho state courts' decisions consistently speak of the contract specification defense as one available to government contractors, without reference to the private sphere. *See, e.g., Green v. Bannock Paving Co.,* 111 Idaho 3, 720 P.2d 186 (1986); *Black v. Peter Kiewit Sons' Co.,* 94 Idaho 755, 497 P.2d 1056 (1972). In one decision, Justice Bakes suggested that the entire doctrine abrogating a contractor's liability in tort where the contractor follows the plans and specifications of the contract is derived from the immunity of the sovereign. *Yel-*

*lowstone Pipeline v. Grant Constr. Co.,* 95 Idaho 794, 520 P.2d 249, 255 (1974). We conclude that the concept of shared governmental immunity underlies, at least to some extent, the Idaho contractor defense. It is therefore our determination that the Idaho Supreme Court would hold that a government contractor is entitled to share the immunity the government retains under Idaho law for strict liability actions.

Appellant relies upon the fact that in enacting the Idaho Product Liability Reform Act, Idaho Code §§ 6–1301 to 1308 (Supp.1989), the Idaho legislature apparently considered, and rejected, a provision which would incorporate the government contractor defense in actions for strict liability. *See* Giametti, 22 Idaho L.Rev. 291, 301–02 (1986) (drafters of Idaho Product Liability Reform Act used Model Uniform Product Liability Act as a starting point); Model Uniform Product Liability Act, § 108(c), *reprinted in* 44 Fed.Reg. 62,714; 62,737 (1979) (setting out government contractor defense). This means that no statute prevents the Idaho Supreme Court from rejecting the defense in a government contract case. The court's decisions to date, however, indicate that it would recognize, rather than reject, the defense. Accordingly, we agree with the district court that the claims in strict liability as well as negligence are barred under Idaho law.

## V. FAILURE TO WARN CLAIM

◼ Nielsen also alleged that the defendants were liable for failing to provide adequate warning labels on the containers in which the paint was provided. The defendants moved for summary judgment on this claim also, contending that the shared government immunity or contract specifications defenses also precluded liability on this theory.

The district court did not rely on an immunity or contract specifications defense in granting summary judgment on Nielsen's failure to warn claim. Rather, the district court went to the merits and held that there was no material issue of fact as to the adequacy of the warnings provided.

We conclude that it was error for the district court to grant summary judgment on Nielsen's claim for failure to warn of the dangers of using the paint. The defendants' motions did not address the adequacy of the warnings themselves. The defendants have never pointed to any mandatory specification in a paint contract that describes warnings in a certain form for all containers of paint, or that precludes the inclusion of additional warnings.

Nielsen's response to the defendants' motion contested defendants' position that the warnings on the paint container labels were controlled by contract specifications. Nielsen provided the court with an affidavit from Alfred Bietelman, the director of the Army Corps of Engineers testing laboratory, which was charged with monitoring manufacturers' compliance with the specifications of their contracts to produce paints. Bietelman stated that his laboratory inspected the labels only for the inclusion of required information, such as the name of the manufacturer, date of manufacture, and batch number, and did not inspect for the adequacy of health warnings.

This affidavit showed that there were triable issues of fact on Nielsen's failure to warn claim. The district court erred in awarding summary judgment to defendants on this claim.

The decision below is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.