James C. JOHNSON and Elizabeth
S. Johnson, Plaintiffs,

and

The United States of America,
Subrogated Plaintiff,

v.

GRUMMAN CORPORATION, Grumman
Allied Industries, Inc., Grumman LLV,
and the Travelers Insurance Company,
Defendants.

No. 91–C–1045–C.

United States District Court,
W.D. Wisconsin.

Oct. 13, 1992.

Michael J. Luebke, Madison, Wis., for plaintiffs.

Mark A. Cameli, Asst. U.S. Atty., Madison, Wis., for U.S.

Donald H. Carlson, Riordan, Crivello, Carlson Law Firm, Milwaukee, Wis., for defendants.

## OPINION and ORDER

CRABB, Chief Judge.

██ This is a civil negligence and strict liability action for monetary relief arising from injuries sustained by James Johnson while working on a United States postal truck manufactured by the Grumman defendants. The case is before the court on defendants' motion for summary judgment. Resolution of this motion rests on whether defendants are eligible to invoke the "government contractor defense" that provides federal common law immunity from state tort law and whether defendants meet the requirements of the defense. I conclude that the "government contractor defense" extends beyond military contractors and products to include contractors who provide civilian products to civilian government entities and thus defendants are eligible to invoke the defense. However, a material dispute of facts exists over the extent to which the United States Postal Service exercised its discretion in approving the alleged vehicle design defect that caused plaintiff Johnson's injury. Therefore, defendants' motion for summary judgment will be denied.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving par-

ty succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

I find from the parties' proposed findings of facts that the following facts are undisputed.

## UNDISPUTED FACTS

The United States Post Office is an independent establishment of the executive branch of the government of the United States. It provides nationwide mail delivery through the use of numerous and various delivery vehicles. Defendant Grumman Corporation is a private corporation organized and existing under the laws of the State of New York, with certain design and manufacturing facilities located in Sturgis, Michigan, and Montgomery, Pennsylvania. Defendant Grumman Allied Industries, Inc. is a wholly-owned subsidiary of defendant Grumman Corporation, also organized and existing under the laws of the State of New York. Grumman Olson is a division of defendant Grumman Allied Industries, Inc., that produces delivery vehicles, among other things. Defendant Grumman LLV is a division of Grumman Allied Industries, Inc., that produces long-life vehicles.

In the early 1980's, the United States Postal Service became interested in devel-

oping a long-life, right-hand drive postal delivery vehicle. On March 20, 1984, in conjunction with its consulting engineers, the postal service issued detailed specifications describing the proposed long-life, right-hand drive delivery vehicle. The specifications produced by the postal service included performance requirements, equipment, quality assurance procedures and testing protocol. In issuing the specifications, the postal service invited candidate manufacturers to respond with technical proposals and technical vehicles for testing purposes. After releasing the specifications, the postal service periodically held bidder conferences to answer questions and explain more fully the specifications to candidate manufacturers. Candidate manufacturers could not deviate from the postal service specifications without the knowledge and approval of the postal service.

On or about September 27, 1984, Grumman Olson responded to the postal service specifications with a technical proposal for testing according to postal service protocol. The Grumman Olson technical proposal vehicle incorporated stepwells in the vehicle, in order to comply with postal service specifications requiring safety for ingress and egress, ease of maintenance and durability. The stepwells in the Grumman Olson technical proposal vehicle were floored and sided with non-skid aluminum treadplate. Grumman Olson has used non-skid aluminum treadplate in various other delivery vehicles. Grumman Olson was the only candidate manufacturer whose vehicle passed the postal service testing procedures.

In March of 1986, the postal service issued a revised set of specifications for its postal delivery vehicle. The revised specifications had many sections that were identical to the original specifications, but they also incorporated information received in the process of development and testing. In April of 1986, the postal service awarded a contract to Grumman Olson for the production of 99,150 long-life vehicles. Production of the postal service long-life vehicle began in April 1987 and continues to date.

During production, the postal service maintains full-time, on-site inspectors at the Grumman manufacturing facility, to ensure that vehicles are produced in compliance with the postal service specifications. The postal service inspectors move freely within the Grumman facility, checking all aspects of the manufacturing process for compliance, including materials and assembly line procedures. In the initial states of production, the postal service inspectors also examined every vehicle manufactured. As production has continued, the postal service inspectors have scaled back the end-line inspections to random checks of vehicles in batches. If any defect is discovered, the entire batch is returned. The postal service has verified that Grumman is manufacturing these vehicles in compliance with postal service specifications.

One modification of the vehicle stepwell has occurred since the vehicle went into production. The original specifications required that the entire vehicle be painted, inside and out, including the stepwell treadplate. Later, the postal service concluded that unpainted treadplate offered a more slip-resistant surface. Consequently, the postal service modified the specifications to eliminate paint of the stepwell treadplate surface, effective October 14, 1988. Pursuant to a postal service directive, all vehicles manufactured after October 14, 1988, had unpainted stepwell treadplate surfaces. The vehicle at issue in this suit was manufactured in 1989.

## DISPUTED FACTS

The parties' dispute of fact centers on the extent to which the design and material of the stepwell were examined, approved, and tested by the postal service during the development process. Defendants submit facts to show that the postal service was involved intimately in the specifications and testing of the stepwell. Plaintiffs deny such governmental involvement and instead submit that the stepwell's design was never subject to such government scrutiny.

## OPINION

In support of their motion for summary judgment, defendants assert that they are immune from any tort liability under Wisconsin law by virtue of the "government contractor defense." Plaintiffs respond that the government contractor defense applies only to military contractors. In addition, plaintiffs argue that even if the government contractor defense applies in non-military contexts, defendants have failed to prove the elements of the defense.

### The Government Contractor Defense

In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Supreme Court defined the scope of the "military contractor defense," also referred to as the "government contractor defense." Under certain circumstances, this defense, as it developed in the federal common law, provides complete immunity to government contractors from liability under state tort law. In *Boyle*, a marine helicopter co-pilot was drowned when his helicopter crashed off the coast of Virginia Beach and he was trapped inside by an escape hatch that opened out instead of in and was rendered inoperable in the submerged craft because of water pressure. Boyle's father sued the helicopter manufacturer under Virginia tort law alleging that the escape hatch was defectively designed. *Id.* at 503, 108 S.Ct. at 2513–14.

The Court held that the manufacturer was immune from Virginia tort law by virtue of the government contractor defense. In recognizing the defense, the Court relied on the policy behind immunity granted to government entities and employees for discretionary acts under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Under that section, government agencies and employees are immune from liability for "discretionary functions," such as balancing technical, military, and social considerations that arise in selecting appropriate designs for military equipment, without the shadow of state tort liability. *Id.* at 511, 108 S.Ct. at 2518. In extending similar immunity to private military contractors, the Court reasoned

[i]t makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.... state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a "significant conflict" with federal policy and must be displaced.

*Id.* at 512, 108 S.Ct. at 2518.

The Court established a three-part test to determine when a significant conflict exists between federal policy and state law. Under this test, state tort liability for design defects in military equipment is displaced when 1) the United States has approved reasonably precise specifications; 2) the equipment conformed to those specifications and 3) the supplier warned the United States about the dangers in use of the equipment that were known to the supplier but not to the United States. *Id.* at 512, 108 S.Ct. at 2518–19. According to the Court, the first two conditions assure that the government actually considered and approved the design in question, placing the suit in the area of "discretionary function." The third condition creates an incentive for manufacturers to disclose known risks in the design or manufacture of the equipment. *Id.* The elements of the test ensure that there exists a "significant conflict" between a federal interest and state law warranting the displacement of state tort law. *Boyle*, 487 U.S. at 509, 108 S.Ct. at 2517.

In applying this test to the facts of *Boyle*, the Court found a federal interest in the procurement of equipment by the United States and the effect that imposing liability on contractors like the defendant would have on the terms of government contracts: "either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected." *Id.* at 507, 108 S.Ct. at 2516. The Court went on to say that identification of a federal interest was a necessary but not sufficient con-

dition for the displacement of state law; a significant conflict between the federal policy and state law must exist. In *Boyle*, the Court found such a conflict because the state-imposed duty of care alleged by petitioner was precisely contrary to defendant's duty to comply with the escape-hatch design specified by the government contract. *Id.* at 509, 108 S.Ct. at 2517.

In this case, a threshold question that must be addressed is whether the government contractor defense applies in a non-military context. The government agency at issue here is the United States Postal Service and the procurement contract was for mail delivery vehicles. If the defense is limited to the military context or military products, defendants have no immunity and are subject to Wisconsin tort law. Although *Boyle* itself arose in a military context, and the Court discussed the necessity of the defense for military purposes, there is nothing explicit in the Court's holding that forecloses its application to all federal procurement.

In support of limiting the defense to the military arena, plaintiffs rely on cases from the Court of Appeals for the Ninth Circuit, holding that *Boyle* is limited to military products. In *Nielsen v. George Diamond Vogel Paint*, 892 F.2d 1450 (9th Cir.1990), plaintiff developed permanent brain damage when he inhaled toxic paint fumes while painting a dam during the course of his civilian employment with the Army Corps of Engineers. Plaintiff sued the paint manufacturer under negligence and strict liability theories and the manufacturer asserted the government contractor defense. The court of appeals rejected application of the government contractor defense, finding that the policy behind the defense recognized in *Boyle* "remained rooted in considerations peculiar to the military." *Nielsen*, 892 F.2d at 1454–55. The court held that sensitive issues of military policy were absent and the application of state law did not create a "significant conflict" with federal policy because the case involved a civilian worker in the course of a civilian job and a product designed for civilian purposes. *Id.* Subsequent Ninth Circuit cases have continued to impose this

limitation on the government contractor defense. *See In Re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir.1992) (defense limited to cases involving complex and sensitive military decisions and not applicable to products readily available on the commercial market) (citing *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 451 (9th Cir. 1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984) (military contractor defense does not apply to "an ordinary consumer product purchased by the armed forces")).

Defendants counter that the policy behind the *Boyle* decision was to immunize discretionary functions of the government in all areas of federal procurement, which would include the mail delivery vehicles at issue here. In a pre-*Boyle* decision, the Seventh Circuit accepted such an interpretation of the government contractor defense. In *Boruski v. United States*, 803 F.2d 1421 (7th Cir.1986), plaintiff had an adverse reaction to a swine flu vaccination developed by the defendant manufacturer and sued both the manufacturer and the United States. The United States had authorized and commissioned the vaccine from the defendant manufacturer to carry out a congressionally-created program to assist local governments in immunizing older persons against the risk of influenza. The manufacturer asserted the government contractor defense as a complete defense to liability under state law. Recognizing that the common application of the defense was in military cases, the court held that it applied equally in civilian settings. In so holding, the court quoted the Eleventh Circuit:

> [b]oth the history of the defense and its general rationale lead us to the conclusion that it would be illogical to limit the availability of the defense solely to "military" contractors. If a contractor has acted in the sovereign's stead and can prove the elements of the defense, then he should not be denied the extension of sovereign immunity that is the government contract defense.

*Boruski*, 803 F.2d at 1430 (quoting *Burgess v. Colorado Serum Co.*, 772 F.2d 844,

846 (11th Cir.1985)). *See also In Re Chateaugay Corp.*, 132 B.R. 818 (Bankr. S.D.N.Y.1991) (citing *Boruski* and *Burgess* in holding the government contractor defense applicable to a manufacturer of postal vehicles for the United States Postal Service).

Since *Boyle*, the Seventh Circuit has neither reaffirmed *Boruski* nor rejected it in favor of the Ninth Circuit approach. *Boyle* itself offers little guidance; the Court uses language such as "military contractor" and "military equipment" instead of the broader "government contractor" and "government procurement," yet bases its analysis on the Federal Tort Claims Act, which applies in both civilian and military contexts. Because *Boyle* is silent on this point, and therefore does not undermine the scope of the defense as found in *Boruski*, I conclude that *Boruski* controls. Under *Boruski*, defendants are eligible to invoke the government contractor defense so long as they can prove each element of the defense.

*Application of the Government Contractor Defense*

As stated above, defendants must establish a "unique federal interest" that conflicts significantly with state law in order to displace state law. Plaintiffs do not dispute that procurement of United States Postal Service vehicles is a unique federal interest. The United States Postal Service is an independent establishment of the executive branch of the United States Government, 39 U.S.C. § 201, and is immune from liability for discretionary actions under the Federal Tort Claims Act. *Jurzec v. American Motors Corp.*, 856 F.2d 1116 (8th Cir.1988). A unique federal interest is invoked when the postal service contracts for specially-designed vehicles to carry out its federal function. Indeed, *Boyle* found a unique federal interest in "civil liabilities arising out of the performance of federal procurement contracts." *Boyle*, 487 U.S. at 506, 108 S.Ct. at 2517. Defendants have established a unique federal interest.

That the procurement of United States Postal vehicles is a unique federal interest is a necessary, but not sufficient condition for the displacement of federal law. *See*

*Boyle*, 487 U.S. at 507, 108 S.Ct. at 2516–17. Defendants must also show that Wisconsin tort law conflicts significantly with an "identified federal policy." *Id.* Here, defendants are on shakier ground. Under *Boyle*, the existence of a significant conflict is established if the United States approved reasonably precise specifications and the equipment conformed to the specifications. *Id.* at 512, 108 S.Ct. at 2518–19.

Since *Boyle*, courts have attempted to establish when specifications are "reasonably precise" and have been sufficiently "approved" by the government to conclude that the government did exercise its discretion, thereby warranting the extension of derivative liability to the government contractor. When the government chooses to delegate its design discretion to a private contractor, the government does not exercise a discretionary function merely by approving the contractor's work. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1485 (5th Cir.1989), *cert. denied*, 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989). In such a case, where the government has delegated its discretion to the contractor, the government contractor defense does not shield the contractor from liability unless there is "approval based on substantive review and evaluation of the contractor's design choices. A mere rubber stamp by a federal procurement officer does not constitute approval and does not give rise to the government contractor defense." *Id.* at 1486. *See also Stout v. Borg–Warner Corp.*, 933 F.2d 331, 335–36 (5th Cir.1991) (not sufficient government "approval" when government does not engage in meaningful review of relevant design features); *cert. denied*, —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991); *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 702–03 (4th Cir.1989) (evidence that Navy personnel participated in design process of plane's landing gear through review meetings, requiring document submissions, periodic approval and denial of proposed changes sufficient for "approval"), *cert. denied*, 495 U.S. 953, 110 S.Ct. 2219, 109 L.Ed.2d 545 (1990).

■ In this case, the relevant inquiry is whether the United States Postal Service engaged in meaningful review of the stepwell and treadplate design sufficient to find that the government exercised its discretion, or whether it delegated such design decision to defendants, merely placing a "rubber stamp" on the ultimate design. On this issue, a dispute of material fact exists. Defendants assert that the design and material of the stepwell were examined and approved by the United States Postal Service throughout the development and testing process. Plaintiffs submit that the design of the stepwell was never approved specifically by the postal service but was delegated completely to defendants. It is undisputed that the postal service subsequently modified the stepwell to require that the surface be unpainted, but it remains unclear whether the underlying *design* of the stepwell was ever sufficiently reviewed by the postal service to constitute "approval" and not merely a "rubber stamp." Because this dispute of fact goes to an element of the *Boyle* test, summary judgment as to the applicability of the government contractor defense is inappropriate at this stage. At trial, the parties can present evidence concerning the postal service's involvement in the design of the stepwell.

Although defendants' motion for summary judgment will be denied, the parties are bound by the findings of fact and conclusions of law set out in this opinion. In other words, plaintiffs may not reargue at trial any of the issues resolved in this opinion. I am not considering at trial the remaining two elements of *Boyle* (whether the stepwell conformed to postal service specifications and whether defendants warned postal service about known dangers) because plaintiffs did not raise and argue these issues in their brief.

### ORDER

IT IS ORDERED that the motion for summary judgment by defendants Grumman Corporation, Grumman Allied Industries, Inc., Grumman LLV and the Travelers Insurance Company is DENIED.