245 P.2d 800

PUGET SOUND NAT. BANK OF TACOMA
v. C. B. LAUCH CONST. CO.

No. 7805.

Supreme Court of Idaho.

June 18, 1952.

70

Kibler & Beebe, Nampa, for respondent.

Hawley & Marcus, Boise, for appellant.

KEETON, Justice.

C. B. Lauch Construction Company, defendant and appellant, entered into a contract dated the 20th of October, 1947, with the Boise Hills Village Incorporated, to construct certain houses and make improvements pursuant to drawings, plans and specifications made a part of the contract. Thereafter, by three several written instruments, part of the contract work so undertaken by appellant was sublet to Saxon Painting Company, hereinafter referred to as Saxon.

By one of these subcontracts, appellant " * * * for the full, complete and faithful performance of this subcontract, agrees to pay to the subcontractor, in accordance herewith, the sum of ($53,500)." For said sum Saxon agreed "To furnish all supervision, labor and materials, and perform all work as described in Paragraph 3 hereof, for the construction of Boise Hills Village project."

Paragraph 3 referred to reads:

"That the labor and materials to be furnished, and the work to be performed by the subcontractor are as follows: All painting as called for or indicated on plans and specifications or addendum. If further changes are made in the painting specifications from the date of this contract, additional or deductive changes will be made at a fair and equitable rate."

The specifications referred to in this paragraph in the contract between the appellant and the Boise Hills Village Incorporated reads:

"Exterior wood work shall have 2 coats paint, factory mixed. Material shall be prepared, ready-mixed paint, and shall consist of a separate primer and separate finish coat, which shall be used together as a two-coat system. All containers shall have labels as required by and satisfactory to the Federal Housing Administration. Thinner and coverage shall conform to specifications on manufacturer's label. It is understood that acceptance of all 2-coat work is withheld by the Federal Housing Administration until completion, and all surface with unsatisfactory coverage shall be redone." (Emphasis supplied)

The subcontract also contained a provision reading:

The subcontractor (Saxon):

"To be bound by the terms of said Main Contract with the Owner (including every part of and all the general and special conditions, drawings, specifications and addenda), in any way applicable to this subcontract, and also by the Provisions Printed On The Reverse Side Hereof, which are hereby referred to and made a part of this subcontract."

The subcontractor further assumed, so far as the subcontract work was concerned "all the obligations and responsibilities which the contractor assumed toward the owner by the main contract * * *."

Other parts of the work undertaken by the appellant were also sublet to Saxon. The amounts earned under these other contracts are not in dispute.

In addition to the general provisions defining the work to be done, and the material to be furnished, the subcontract contained the following provisions:

Saxon "to commence and at all times to carry out, perform and complete this subcontract to the full and complete satisfaction of the contractor, and of the architect or owner. It is specifically understood and agreed that in the event the contractor shall at any time be of the opinion that the subcontractor is not proceeding with diligence and in such a manner as to satisfactorily complete said work within the required time, then and in that event the contractor shall have the right, after reasonable notice, to take over said work and to complete the same at the cost and expense of the subcontractor, without prejudice to the contractor's other rights or remedies for any loss or damage sustained."

Pursuant to the subcontract Saxon commenced the painting operation in January, 1948, completing work thereunder in December of the same year. Saxon made assignments of all sums due or to become due under the contract to the plaintiff bank, respondent here.

In June, 1949, six months after Saxon had completed the painting job, objection to the work was made by the owner, or those acting for it. This objection was not made on the grounds that the paint used did not conform to specifications, or the application of the same to the wood was not properly done, or that any of the wood had been left unpainted. The objection was entirely on other grounds.

In furnishing the paint, Saxon was limited to a certain brand of factory mixed paint. He had nothing to do with the selection of colors, this being a privilege of the owner, to be selected from certain basic or multiple colors which appeared in the specifications, and when so selected, it was the contractual duty of Saxon to apply the same to the wood of the building.

During the progress of the work, Saxon performed certain extra work and claimed an additional sum earned, amounting to $21,464.19. This extra work claim was disputed by appellant and after some negotiations, a settlement was made and the extra work adjusted in the sum of $13,-670.68. For the work done under the subcontracts, and the extra work performed and agreed to by settlement, Saxon claimed to have earned an aggregate of $81,826.68. There were cash and other

credits of $61,868.03, leaving, according to Saxon, a balance of $19,958.65.

In a letter dated March 16, 1949, three months subsequent to the time Saxon claimed to have performed his contract and left the job, addressed to an officer of respondent, signed by the appellant, a complete tabulation of the amounts earned, including sums by reason of the contract now in dispute, and the credits given was furnished the respondent. The balance shown amounted to the sum of $19,958.65.

Payment not having been made, plaintiff brought this action as assignee of Saxon to recover the amount claimed due.

The answer, among other things, alleged that the painting work was unsatisfactory, and that the Federal Housing Administration, in July, 1949, after an inspection of the Boise Hills Village project, had made a list of claimed deficiencies in performance by the appellant, and one of the claimed deficiencies listed was the unsatisfactory condition of the exterior paint applied by Saxon; that to conform the exterior paint to the specifications made a part of all contracts, and to secure final approval required an additional coat of paint on all exterior surfaces; and that after notice to Saxon and his refusal to apply a third coat of paint, appellant repainted the exterior of the Boise Hills Village project, and made the same acceptable to the owners at an expense of $8,810.45. The answer asked to have this sum offset against the sum claimed by respondent.

On issues thus joined, the matter was tried before a jury and a verdict rendered for $19,958.65, for which amount judgment was entered. Defendant appealed.

Among the objections made to the exterior painting job, for which appellant claimed an offset was that the paint had faded after being applied; the siding to which the paint was applied was in a warped condition; that Saxon failed to make objection to the siding; that the siding was not the type called for in the specifications; that he made no objection and went ahead with the painting job; further that Saxon knew that two coats of paint were insufficient to hold colors in a sunny climate.

In answer to these contentions it should be noted that Saxon had nothing to do with the furnishing or placing of the siding on which the paint was to be applied. The contract called for a *two* coat paint job, not three, and whether the job was sufficient or not, it was the specification under which Saxon did the painting. The kind of paint to be used with mix and priming were matters with which Saxon had nothing to do. There is no contention that the paint used did not fully comply with the specifications under which the work was done, or that the paint was not properly applied. Under the contract, Saxon had nothing to do with the selection of paint or colors. He was to apply two coats of paint of a specified kind, and whether or not this was sufficient was a matter over

which Saxon had no control. If the siding placed on the building shrank or did not shrink, or contained too much moisture, or was not up to grade, as contended by appellant, it was a matter under the exclusive control of persons other than Saxon. The application of the siding and the kind to be used was under the supervision of the main contractor, appellant here. Appellant does not challenge the paint mixture as being insufficient. An expert witness called by the appellant testified that the housing project was in a sunny area and testified "it is the ultra violet rays of the sun that induce the breakdown on the film", (referring to the paint).

After Saxon finished his contract, to which no objections were then made, the owner, or those speaking for it, required a third coat of paint.

Succinctly, the question presented is whether or not the appellant should be allowed an offset for cost of repainting, if repainting was required by the owner or those speaking for it. This was the issue which was submitted to the jury.

Respondent does not dispute that Saxon, so far as the paint job was involved, was bound to perform pursuant to the terms of the appellant's obligations, but contends that the subcontract and all specifications included therein by reference were fully complied with on his part.

■ In assignments of error, appellant specifies the insufficiency of the evidence to justify the verdict. Conceding that the facts were in dispute, the jury evidently adopted the respondent's theory that the subcontract had been fully performed. The question of defective performance, if any, was a question of fact, and if the subcontractor fully performed the contract, and the same was unsatisfactory, in order to prevent the respondent from recovering, the dissatisfaction would necessarily have to be due to incomplete or defective performance by Saxon. The fact that the appellant was requested, if it was, by the owner, or by some agency loaning the money for the job (F.H.A. or Prudential Life Insurance Company, or their agent) to apply a third coat of paint, compliance with such request was certainly not the obligation of the subcontractor. Suppose after the application of the third coat of paint the siding had still warped and the paint faded, or had the job still been unsatisfactory, could it reasonably be contended that Saxon, who had contracted for a two coat paint job, should be required to put on a fourth? The question answers itself.

■ The general propositions of law submitted by the appellant to the effect that a subcontractor is bound by the contract of the original contractor with the owner, where the specifications are made a part of the contract, and the subcontractor is bound by the conditions and specifications contained in the original contract, are rules well recognized.

 In the instant case, the subcontract and the original contract were received in evidence. Saxon contended that he complied with the terms and conditions of the contract for the painting between the contractor and the owner. Respondent contended otherwise. The jury determined the issue.

 Appellant offered in evidence exhibit 24, being the general conditions of the contract for the construction of buildings adopted by the American Institute of Architects. Appellant's contract with the owner contains a provision that these general conditions, where not inconsistent with the contract between the appellant and Boise Hills Village, shall be. part of the contract and provides "if anything in said general conditions of the contract (offered exhibit 24) is inconsistent with this instrument, this instrument (contract between owner and appellant) shall govern". The purpose of this offer was apparently to prove liability of the contractor in case of faulty material or workmanship, and a requirement of the contractor (appellant) to remedy and make good deficiencies in the work, if any existed; and the further right of the owner to do the work if the contractor failed to do so, and deduct the cost of remedying the deficiencies, if any. The court sustained an objection to the offer. This ruling is assigned as error.

Saxon does not and did not dispute that he was bound to perform the painting job in accordance with the obligations of the appellant, and as above stated, it is not shown where the work of Saxon did not comply with all obligations of the contractor. No faulty work on the part of Saxon was shown, nor was there any showing that the part of the work undertaken by Saxon was not fully performed.

. There was no showing of any breach of the general conditions contained in the exhibit which are chargeable to Saxon. If Saxon's work was defective, he was never notified of it. The refusal to admit the exhibit in evidence is harmless error for the reason it was conclusively shown that the necessity for doing the painting job a second time was not because of deficiencies or fault on the part of Saxon. Even though the exhibit had been admitted in evidence, it would create no liability on the part of Saxon. So far as Saxon's part of the work was concerned, the conditions were fully complied with.

 Appellant assigns as error the giving of an instruction covering substantial performance, the instruction complained of being as follows:

"If you find from the evidence that there has been a substantial performance of the sub-contracts and agreements by the Saxon Painting Company with the defendant, then the plaintiff as the assignee of the Saxon Painting

Company is entitled to recover in this case.

"Before you can find that plaintiff's assignee, Saxon, has substantially performed his contract with Lauch Construction Company, you must find that he had performed his contract in all of the important particulars thereof, even though you need not find exact performance of every slight or unimportant detail. Substantial performance implies that the subcontractor has done his work carefully, in good faith, and has completed his work in all material respects."

In the instant case, appellant requested a similar instruction which was modified and given. (Defendant's requested instruction 13) Appellant cannot complain of an instruction to the jury which it requested. Neff v. Hysen, 72 Idaho 470, 244 P.2d 146 and cases there cited.

■ The giving of the instruction under the conditions presented was not error.

■ The respondent contended that Saxon had compiled with the contract in every detail. Appellant contended that he had failed to perform in important substantial details. In instruction 4 given, the jury was instructed among other things, that "it would be your duty to determine from the evidence all credits, if any, defendant is entitled to on this difference of $8,810.-45, and what, if any, portion of said sum is owing to the plaintiff on its assignment". In other instructions every issue was plainly detailed that existed in the controversy, and the jury was instructed that if the defendant was entitled to any deduction, the same should be by the jury allowed. When taken as a whole, the instructions fully covered the issues presented.

■ The contract in question provided that the painting job should be done to the full and complete satisfaction of certain specified persons. This means satisfaction to a reasonable person. By the terms of the contract, the owner or others were not entitled to additional or further work not specified in the subcontracts. Fielding & Shepley, Inc., v. Dow, 72 Cal.App.2d 18, 163 P.2d 908; Haverty Co. v. Jones, 185 Cal. 285, 197 P. 105; Tiffany v. Pacific Sewer Pipe Co., 180 Cal. 700, 182 P. 428, 6 A.L.R. 1493; 9 Am.Jur. 30, Sec. 40. Further Saxon's work was not shown to be unsatisfactory because of any failure or neglect on his part to perform.

■ Appellant further complains of not letting a witness C. B. Lauch answer the following question:

"With respect to who bears the risk or responsibility in a sub-contract with a prime contractor, with respect to either deficiency in the contractor's work or deficiency in the sub-contrac-

tor's work, who bears that risk or responsibility as a matter of custom?"

The terms of a plain, unambiguous contract cannot be varied or contradicted by evidence of usage or custom. Ehlinger v. Washburn-Wilson Seed Co., 51 Idaho 17, 1 P.2d 188; Gramkow v. Farmers Co-operative Irrigation Co., Ltd., 47 Idaho 578, 277 P. 431. The objection was properly sustained.

A contractor is required to follow the plans and specifications and when he does so, he cannot be held to guarantee that the work performed as required by his contract will be free from defects, or withstand the action of the elements, or that the completed job will accomplish the purpose intended. He is only responsible for improper workmanship or other faults, or defects resulting from his failure to perform. Friederick v. County of Redwood, 153 Minn. 450, 190 N.W. 801; Reinhardt Construction Co. v. Baltimore, 157 Md. 420, 146 A. 577: State v. Commercial Casualty Company, 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790; 88 A.L.R. 797, Annotation; Oklahoma City v. Derr, 109 Okl. 192, 235 P. 218; Woods v. Amulco Products, Okl., 232 P.2d 273.

An examination of the record discloses that there is no reversible error. We do not see how the jury could have arrived at any other conclusion than it did. Judgment is affirmed. Costs to respondent.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.