821 P.2d 957

**Richard LEAZER and Marjorie Leazer, husband and wife, Plaintiffs–Appellants,**

v.

**Edward J. KIEFER, M.D., and John Does I–V, Defendants–Respondents.**

No. 18685.

Supreme Court of Idaho, Boise, January 1991 Term.

Nov. 18, 1991.

Rehearing Denied Nov. 18, 1991.

E. Lee Schlender, Hailey, for plaintiffs-appellants.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Bruce R. McAllister, argued.

1991 OPINION NO. 66, FILED MAY 17, 1991, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

McDEVITT, Justice.

The appellant, Richard Leazer, filed a medical malpractice action against the defendant, Dr. Kiefer. The appellant was 27 years old when he required surgery to correct a herniated disk. After the surgery was performed, the appellant lost all feeling in his lower extremities. Despite Dr. Kiefer's efforts to correct this problem, the appellant was left paralyzed. In his complaint, the appellant alleged that Dr. Kiefer's negligence caused him to become a permanent paraplegic.

The appellant's back problems have been caused by a series of on-the-job injuries at the Amalgamated Sugar Factory in Twin Falls. Beginning in 1978, the appellant slipped on a wet floor and sprained his back. In 1980, the appellant fell approximately 8 feet from a rope onto the edge of a steel barrel. After the fall, the appellant complained of numbness and reduced movement in his legs for approximately 24 hours. While doing inventory in 1983, a fellow employee fell on top of him from a ladder. In 1984, he was lying on the floor helping pull a fellow employee out of a pit when his supervisor, who weighed 300–350 pounds, stepped on his back.

Surgery to remove a herniated disk was performed on October 16, 1984 ("the first operation"). Shortly after surgery, the appellant developed a hematoma on his nerve cords and also complained of paralysis of his legs, which required surgery to relieve the pressure ("the second operation"). The delay in removing the hematoma caused increased pressure on his nerves. Ultimately, the pressure irreparably damaged the appellant's nerve cords and he is now permanently paralyzed, with loss of leg movement and bowel and bladder control. The appellant asserts that the delay was caused by Dr. Kiefer's negligence in diagnosing the hematoma.

Dr. Kiefer offered various explanations for the delay: (1) he felt the paralysis was caused by hysteria; (2) Leazer suffered from a rare blood disorder that caused excessive bleeding preventing another operation; (3) he felt the appellant suffered from arachnoiditis (an inflammation of the membranes that protect the spinal column) or congenital spondylosis (a weak vertebrae); or (4) surgical retraction tools caused the paralysis. Dr. Kiefer offered these explanations in order to show the reasonableness of his actions. Although none of the above explanations proved to be the true cause of the paralysis, Dr. Kiefer testified that there were indications and symptoms to support these diagnoses.

After the first operation on October 16, 1984, the appellant complained of pain and numbness in his lower extremities. He denied the urge to void which required the use of a catheter. Dr. Kiefer's notes and the nurse's notes indicated that the appellant was unable to move his feet and was unable to detect stimuli. At times, the appellant showed some improvement, but overall his condition remained substantially

the same until the time of the second operation on October 18.

Dr. Kiefer noted on the medical charts that the appellant was "paretic," which Dr. Kiefer interprets to mean "weakness." The day after the first operation, Dr. Kiefer noted that the appellant's paralysis seemed to be the result of "hysterical response." He offered nothing to explain this diagnosis, only that the appellant's wife was very understanding of the problem of hysteria. The appellant's condition varied, and on October 17, Dr. Kiefer ordered a neurologic consultation.

This neurologic consultation was performed by Dr. Wilson on October 18. Dr. Wilson suspected a problem with the cauda equina and recommended a CT Scan and also a Myelogram to determine if indeed there was a blockage of the spinal canal. These tests were performed the same day. They showed a possible blockage of the spinal column.

Within an hour of receiving the results, Dr. Kiefer performed the second operation, assisted by Dr. Cindrich. A hematoma was found and evacuated. Despite removing the hematoma, the appellant was left a paraplegic.

■ At issue in this appeal are the instructions given to the jury. Our standard of review requires us to determine whether the jury instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *Matter of Estate of Roll*, 115 Idaho 797, 770 P.2d 806 (1989). If the jury instructions adequately present the issues and state the applicable law, no error is committed. *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983). To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985).

■ Appellants requested an instruction based on Idaho Jury Instruction 205 which reads as follows:

A physician or surgeon undertaking the treatment of a patient has a duty to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in the community in which he provided such treatment or should have provided such treatment. It is further his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.

Instead of this instruction, the court gave the following as Jury Instruction No. 12:

In performing professional services for a patient, a physician has the duty to have the degree of learning, skill, and qualifications ordinarily possessed by reputable physicians practicing in the same community, at the same time, and under similar circumstances.

A physician has a further duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same community, at the same time, and under similar circumstances, and to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning and qualifications in an effort to accomplish the purpose for which the physician is employed.

If the physician holds himself out as a specialist in a particular field of medical, surgical, and other healing science, it also is his duty to have the knowledge, skill, and qualifications ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field, in the same community, at the same time, and under similar circumstances.

A failure to fulfill the foregoing duty or standard of care is negligence.

A physician is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful. The physician is negligent only if the error in judgment or lack of success is due to a failure to perform any of his duties defined in these instructions.

Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively

and uniformly by all practitioners in good standing in the particular field of specialization, a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.

This instruction incorporates several instructions from the *California Book of Approved Jury Instructions,* commonly referred to as "BAJI." Appellants take exception to the "best judgment" language of this instruction, although the instruction requested by the appellants also contained similar language. Both IDJI 205 and the jury instruction given apparently conflict with I.C. § 6–1012, which contains the standard of care for physicians in medical malpractice cases. Idaho Code § 6–1012 states:

> **6–1012. Proof of community standard of health care practice in malpractice case.**—In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any dentist, physicians' assistant, nurse practitioner, registered nurse, licensed practical nurse, nurse anesthetist, medical technologist, physical therapist, hospital or nursing home, or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any. If there be no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at said time may be considered. As used in this act, the term "community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.

In *LePelley v. Grefensen,* 101 Idaho 422, 614 P.2d 962 (1980), this Court upheld the constitutionality of I.C. § 6–1012. Since that time, we have consistently held that I.C. § 6–1012 is the standard of care to be used in medical malpractice cases.[1]

In *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1987), the trial court refused to give an instruction based on IDJI 205. Instead, the trial court instructed the jury according to I.C. §§ 6–1012 and 6–1013. We upheld the trial court's instructions by holding that I.C. § 6–1012 is the applicable standard of care in Idaho medical malpractice cases.

Idaho Jury Instruction 205 is based upon *Davis v. Potter,* 51 Idaho 81, 2 P.2d 318 (1931), and *Swanson v. Wasson,* 45 Idaho

---

1. *Gubler v. Boe,* 120 Idaho 294, 815 P.2d 1034 (1991); *Sherwood v. Carter,* 119 Idaho 246, 805 P.2d 452 (1991); *Hilden v. Ball,* 117 Idaho 314, 787 P.2d 1122 (1989); *Strode v. Lenzi,* 116 Idaho 214, 775 P.2d 106 (1989); *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1989); *Sparks v. St. Luke's Reg. Medical Ctr.,* 115 Idaho 505, 768 P.2d 768 (1988); *Dekker v. Magic Valley Reg. Med. Ctr.,* 115 Idaho 332, 766 P.2d 1213 (1988); *Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988); *Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988); *Grimes v. Green,* 113 Idaho 519, 746 P.2d 978 (1987); *Buck v. St Clair,* 108 Idaho 743, 702 P.2d 781 (1985); *Maxwell v. Women's Clinic, P.A.,* 102 Idaho 53, 625 P.2d 407 (1981).

309, 262 P. 147 (1927). The *Davis* court obtained the "best judgment" requirement from *McAlinden v. St. Maries Hospital Assn.*, 28 Idaho 657, 156 P. 115 (1916). In passing the legislation creating § 6–1012 our legislature expressed a concern about maintaining the availability of medical malpractice insurance in the state so they created a more definable standard. 1976 Idaho Sess. Laws, ch. 277, § 1. By enacting this statute, the legislature replaced the applicable standard of care then in effect with a new standard. Pursuant to this new standard, Jury Instruction No. 12 inaccurately stated the applicable Idaho Law by incorporating "best judgment" in the standard of care for medical malpractice. The trial court erred in giving this instruction.

We also note that IDJI 205 appears to suffer from this same fatal flaw. The passage of I.C. § 6–1012 has required new jury instructions dealing with the standard of care. In order to avoid unnecessary confusion, we express our preference for the instructions we approved in *Robertson v. Richards*, 115 Idaho 628, 633 n. 4, 769 P.2d 505, 510 n. 4 (1989). These preferred instructions accurately state the standard of care pursuant to I.C. § 6–1012.

The appellant requested an instruction in substantially the form of IDJI 205 and had that instruction been given, the appellant could not now complain as it would have been invited error. *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983); *Bell v. Joint School District No. 241*, 94 Idaho 837, 499 P.2d 323 (1972); *Hansen v. Howard O. Miller, Inc.*, 93 Idaho 314, 460 P.2d 739 (1969); *Puget Sound Nat. Bank v. C.B. Lauch Const. Co.*, 73 Idaho 68, 245 P.2d 800 (1952). However, the court's Instruction No. 12 goes well beyond that requested by the appellants and contained an erroneous standard of care.

Our next level of inquiry requires us to determine the effect of this error. We must determine whether the jury instructions, as a whole, adequately and correctly stated the law. *Matter of Estate of Roll*, 115 Idaho 797, 770 P.2d 806 (1989); *McBride v. Ford Motor Co.*, 105 Idaho 753,

673 P.2d 55 (1983); *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967).

Plaintiffs' counsel strenuously objected to the last two paragraphs of Instruction No. 12. In registering his objection to the instruction, plaintiffs' counsel stated:

From line 23 on [the fifth paragraph], however, I have grave consternation about the instruction because from that point on it begins to comment upon what judgment is and is not and is argumentative. That it begins to argue as to when a physician is negligent and when he is not.

It says he's not necessarily negligent. Well, that isn't accurate because he can be negligent. And whether he is necessarily or not necessarily or almost necessarily provides my argument, in that adjectives and adverbs are argumentative. They are expanders or contractors and are unnecessary.

I think it would be highly prejudicial because of the argument that can be made from the instruction by counsel. And that is this is simply an error or he used his best judgment. And if he used his best judgment, he can't be negligent because he's not necessarily negligent if he errs in his judgment.

They can argue that from the above instruction. In other words, you've already said he has to use reasonable diligence in line 11 and his or her best judgment in the skill, exercise of skill and the application of learning. That's accurate and that does provide the exact language from IDJI 205. It's the same sentence as 'it is further to use his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.' So you have already advised on it. Counsel can comment and fair comment will include comments to the effect of what comes from line 23 down.

Plaintiffs' counsel correctly envisioned the problem with this instruction. Defense counsel also saw the error and capitalized upon it in his closing argument. In addition to adding confusion, the two paragraphs in question misstated the standard

of care and misguided the jury in determining negligence. The other instructions did not cure the error of Instruction No. 12. The only way to remedy the error is to remand for a new trial.

The decision of the Court of Appeals is vacated, and the district court decision is reversed and remanded for new trial.

Costs to appellant.

BISTLINE, JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, specially concurring.

## PART I

Having fully concurred in Justice McDevitt's opinion, my purpose in writing additionally is based on the belief that the readers of the Court's opinions often appreciate being informed more fully as to what the controversy was all about. Basically, as set out in Justice McDevitt's opinion, the primary issue here involved the trial court's giving the jury, against plaintiffs' objection, Instruction No. 12. Justice McDevitt has correctly noted that plaintiffs' counsel strenuously objected to the last two paragraphs thereof, and that plaintiffs' counsel explained his reasons for objecting, i.e., that it supplied the defense with ammunition with which to riddle the plaintiffs' case in defendants' final summation address to the jury. Accordingly, it is only necessary to explain the full extent of given Instruction No. 12, and why it should not have been given, and illustrate fully the manner in which astute defense counsel in his final summation to the jury was able to capitalize on it, thereby insuring that the jury was misdirected to the disadvantage

of the Leazers in their attempt at recovering monetary damages for an extremely serious personal injury. At the same time the reader is presented with a short critique of the dissenting opinion issued by Chief Justice Bakes.[2]

In the instant case it is beyond cavil that plaintiffs' counsel realized on reflection that the particular submitted instruction possessed the capability of being used to the disadvantage of his clients. In *defendants'* brief filed in this Court it is acknowledged that plaintiffs registered a strong objection to given No. 12, and in that brief the defendants displayed some of the plaintiffs' reasons for objecting. However, rather than recite the content of the brief, it is better that *all* of the plaintiffs' objection be lifted from the reporter's transcript and spread before the readers of the various and sundry opinions which today emanate from the Court relative to the instructing of the jury:

[Mr. Schlender:] My objection isn't to the entire instruction. In fact, I think that the portion of it that comes down to line 23 that says, 'the failure to fulfill the foregoing duty is negligence,' I think that is correct. It's about half way through your stack, I think. That is not the exact language of 205, IDJI 205, but it's very close. It paraphrases it, adds a few things, and I think capsulizes the law of medical negligence.

From line 23 on, however, I have grave consternation about the instruction because from that point on it begins to comment upon what judgment is and is not and is argumentative. That it begins to argue as to when a physician is negligent and when he is not.

---

**2.** The Chief Justice sets forth the plaintiffs' *requested* instruction at 913, 821 P.2d at 968. That which he neither mentions nor considers is that the instruction, which plaintiffs submitted prior to trial (as is known to be the established procedure) was not binding on the plaintiffs, simply because it was *not* given. Justice McDevitt in his opinion for the Court states as much. He also discloses the highly singular fact that the district judge gave Instruction No. 12 on his own initiative. To which I add only that over a full month before the trial date the plaintiffs' attorney submitted a full set of instructions one of which did include "best judg-

ment" language. But that is not the end of all inquiry. As a trial progresses, there may be developments which bring counsel to a change of mind as to the applicability of the admitted evidence to certain instructions which were requested earlier. Any trial practitioner, even of limited experience, is aware of his entitlement to withdraw an instruction submitted prior to trial. During a long span of time in law school and then practicing, and then in this position, I have yet to hear of a trial judge advising an attorney that he is saddled forever with whatever instruction he has drafted and submitted prior to trial.

It says he's not necessarily negligent. Well, that isn't accurate because he can be negligent. And *whether he is necessarily or not necessarily or almost necessarily* provides my argument, *in that adjectives and adverbs are argumentative.* They are expanders or contractors and are unnecessary.

I think it would be highly prejudicial because of the argument that can be made from the instruction by counsel. And that is, *this is simply an error or he used his best judgment. And if he used his best judgment, he can't be negligent because he's not necessarily negligent if he errs in his judgment.*

*They can argue that from the above instruction.* In other words, you've already said he has to use reasonable diligence in line 11 and his or her best judgment in the skill, exercise of skill and the application of learning. *That's accurate and that does provide the exact language from IDJI 205.* It's the same sentence as 'it is further to use his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.' So you have already advised on it. Counsel can comment and fair comment will include comments to the effect of what comes from line 23 down.

Moreover, the remainder of the paragraph isn't applicable to this case *in that there has been no testimony that there is*, quote 'more than one recognized method of diagnosis and/or treatment.' All the surgeons, all the experts have agreed as to diagnostic testing or what is available and what the treatment should be.

There might be a divergence of opinion as to when treatment and when diagnosis should be done, but there is no divergence of opinion as to what should be done. So in that respect, it is also simply surplusage.

That is really my only objection to the ones that the court is now going to give. Tr., pp. 1977–78.

Tr.Vol. 19, 1977–79 (emphasis added).

Plaintiffs' counsel's observation that prejudicial comment could be made on this instruction was borne out by opposing counsel's closing argument, as is readily seen from the transcript and the briefs filed in this court. Extremely adept defense counsel did indeed capitalize on the instruction, closing his argument with the following:

> [Mr. Quane:] *Now, there is a jury instruction that I want to briefly mention, and its a page and a half. And it starts out by defining what the obligation of Dr. Kiefer was. And these instructions are just as much a* **law** *in a jury trial like this as the* **law** *that you can't speed or you can't run through stop signs. Has the same legal effect and we're all bound by it, whether we like them or not. And we're all duty bound, whether we're jurors or not, to obey these* **laws.** *They're called instructions, but they're* **laws.**
>
> And this is a big, long job and I want to read just two paragraphs. 'A physician is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful. The physician is negligent only if the error in judgment or lack of success is due to a failure to perform any of his duties defined in these instructions.
>
> Where there is more than one recognized method of diagnosis or treatment and no one of them is used exclusively and uniformly by all practitioners in good standing in the particular field of that specialization, a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.'
>
> This is, as far as a civil case of this case [sic, kind] is concerned, *this is as sacred a* **law** *as the* **law** *against murder.* It doesn't matter whether we like it or not.
>
> Now, Dr. Kiefer chose a method of treatment and/or diagnosis after the 16th that he, per the record, envisioned as that which was appropriate in not returning the man to surgery, thinking it was either the traction or this hysteria,

or both. He chose that course as the record tells us.

Dr. Powell disagrees with that, said he should have not done that. He should have engaged in the treatment and diagnosis that I prefer, that I recommend. *But this* **law** *says he does not have to do that.*

'Where there is more than one recognized method of diagnosis or treatment and no one of them is used exclusively—' and I'm talking about diagnosis following the 16th surgery and what he did and how this case, the hematoma was ultimately diagnosed. Not what you do after the diagnosis is made, not what you do afterwards, but how you go about arriving at the problem, reaching a diagnosis, and what you should do—'a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.' *And he is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful.*

Tr.Vol. 19, 2125–27 (emphasis added).

## PART II

It is not understood why Justice McDevitt finds it necessary to vacate the final opinion of the Court of Appeals in this case. That opinion is structurally sound and in my view should have been left undisturbed, allowing the cause to have been returned to the district court for a new trial over a year and one-half ago. The full text of the Court of Appeals opinion is:

This is a medical malpractice case. The appellant, Richard Leazer, argues that the trial judge erred in denying Leazer's motion for a new trial following a jury verdict in favor of the defendant, Doctor Edward Kiefer, a neurosurgeon. Leazer first contends that the judge erroneously instructed the jury regarding the standard of care owed by a physician to his patient. Second, Leazer argues that the jury's verdict was against the weight of the evidence. Because we find Leazer's argument regarding the jury instruction convincing, we reverse the judge's

denial of Leazer's motion for a new trial and remand the case to the district court for a new trial.

The facts of this case are complex, but those essential to our opinion may be summarized as follows. Dr. Kiefer operated on Leazer to repair a ruptured disc. Following the operation, a blood clot formed next to Leazer's spinal cord. Dr. Kiefer removed the clot two days after the disc operation. However, Leazer was rendered a paraplegic due to damage caused by the clot. Leazer sued Dr. Kiefer, alleging that his post-operative treatment failed to meet the applicable standard of health care practiced in the community. After evidence was presented at trial, the jury was given—over Leazer's objection—an instruction commonly referred to as an 'error in judgment' instruction:

■ In performing professional services for a patient, a physician has the duty to have the degree of learning, skill, and qualifications ordinarily possessed by reputable physicians practicing in the same community, at the same time, and under similar circumstances.

■ *A physician has a further duty to use the care and skill ordinarily exercised in like cases* by reputable members of the profession practicing in the same community, at the same time, and under similar circumstances, *and to use reasonable diligence and his or her best judgment* in the exercise of skill and the application of learning and qualifications in an effort to accomplish the purpose for which the physician is employed.

■ If the physician holds himself out as a specialist in a particular field of medical, surgical, or other healing science, it also is his duty to have the knowledge, skill, and qualifications ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field, in the same community, at the same time, and under similar circumstances.

■ A failure to fulfill the foregoing duty or standard of care is negligence.

■ *A physician is not necessarily negligent because he errs in judgment* or because his efforts prove unsuccessful. *The physician is negligent only if the error in judgment or lack of success is due to a failure to perform any of his duties defined in these instructions.*

■ Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners in good standing in the particular field of specialization, *a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection* or one not favored by certain other practitioners.[3] [Emphasis and bracketed numbers added.]

The jury returned a verdict in Kiefer's favor. Leazer timely filed a motion for new trial, alleging error in giving the instruction quoted above. Leazer's motion was denied and this appeal followed.

In reviewing jury instructions, our task is to determine whether the trial judge instructed the jury in all matters of law necessary for the jury's information. I.C. § 19–2132(a). In doing so, we must ascertain whether the instructions, as a whole, properly state the law applicable to the issues, and if not, whether the complaining party was prejudiced thereby. *See Blaine v. Byers*, 91 Idaho 665, 672, 429 P.2d 397, 404 (1967); *accord Packard v. Joint School District No. 171*, 104 Idaho 604, 612, 661 P.2d 770, 778 (Ct.App.1983). In determining whether the trial judge has properly instructed the jury regarding the applicable law, we will exercise free review.

In the present case, Leazer contends that the error in judgment instruction improperly states the standard of care owed to Leazer under the circumstances. Leazer submits that the instruction is

argumentative because it infers that Kiefer was not negligent if he used his best judgment in performance of his duties. Relying on the recent Oregon case of *Rogers v. Meridian Park Hospital*, [307 Or. 612], 772 P.2d 929 (Or.1989), Leazer maintains that he was prejudiced by the challenged instruction.

In contrast, Dr. Kiefer submits that the error in judgment instruction is an acceptable jury charge, and is recognized as such in other jurisdictions. *See Fraijo v. Hartland Hospital*, [99 Cal.App.3d 331], 160 Cal.Rptr. 246 (Cal.App.1979); *Fall v. White*, 449 N.E.2d 628 (Ind.App. 1983); *Grassis v. Retik*, [25 Mass.App. Ct. 595], 521 N.E.2d 411 (Mass.App. 1988); *Husaker [Hunsaker] v. Bozeman Deaconess Foundation*, [179 Mont. 305], 588 P.2d 493 (Mont.1978). Dr. Kiefer also contends that the instruction is applicable where there is evidence the physician was exercising reasonable care in treatment of his patient, but was faced with the decision of having to make a choice between acceptable medical treatments.

We disagree with Dr. Kiefer's contentions. In *Rogers v. Meridian Park Hospital, supra,* the Oregon Supreme Court discussed an error in judgment instruction similar to that given in the present case. That instruction read:

■ A physician is charged with applying without error those principles and learnings that are settled and agreed upon by all members of the medical profession. [2] In some cases, there may be reasonable differences of opinion among members of the medical profession as to the nature of the patient's condition or the proper course of treatment. [3] When there is such a difference of opinion, the physician must exercise reasonable judgment. [4] A physician is liable for an error of judgment if the physician fails to act with reasonable care and skill in exercising that judgment. [5] A physician is not liable for an error in judgment if the physician acts with reasonable care

---

**3.** The instruction evidently was adapted from Parts 6.00 to 6.03 of California Jury Instructions, Civil: Book of Approved Jury Instructions (7th Ed.1986).

and skill in exercising that judgment. [Bracketed numbers part of original quote.]

772 P.2d at 930. In evaluating this language, the Oregon Court recognized a growing trend among courts in other jurisdictions to disapprove of such instructions.[4] The Court noted that inclusion of error in judgment language in the instruction obscured the fact that, to avoid liability, the defendant must exercise the degree of care, skill and diligence required by law. 772 P.2d at 933. The Court also stated that sentence [3] of the instruction made it appear that the exercise of reasonable judgment was the operative issue for the jury to decide; yet, as the Court noted, the reasonable judgment issue does not displace the ultimate question of reasonable care. *Id.* Furthermore, the Court stated that sentences [4] and [5] were confusing because they implied that a physician would not be liable for bad results which arise from an error in judgment and, as a result, some types of negligence are not culpable. Finally, the Court noted:

> The instruction given by the trial court was based on language concerning the exercise of 'judgment' by doctors found in opinions of this court and the Court of Appeals. If the term 'judgment' refers to choices between acceptable courses of treatment, then the term 'error in judgment' is a contradiction in itself. [Footnote omitted.] Use of any acceptable alterative would not be an 'error.' Witnesses may continue to use terms such as 'exercise of judgment.' But the court should not instruct the jury in such terms; such instructions not only confuse, but they are also incorrect because they suggest that substandard conduct is permissible if it is garbed as an 'exercise of judgment.'

*Id.* at 933.

Here, we reach a similar conclusion. Like the *Rogers* court, we conclude that the fifth and sixth paragraphs of the instruction challenged in this case obscure the fact that a physician must meet the standard of care, skill and diligence required by law in order to avoid liability. The statements contained therein imply that a physician may escape liability solely by exercise of best judgment, without regard for the applicable standard of care. This is in contradiction to the standard that a physician may evade liability for utilizing best judgment only when that judgment constitutes choosing between one of several medically acceptable courses of treatment, each of which represents reasonable care for the patient. Use of the term 'best judgment' in this instruction could easily be interpreted by the jury to mean that a physician would be free of negligence if he exercised *either* reasonable care *or* his or her best judgment. *See Teh Len Chu, supra*, n. 2, 290 S.E.2d at 822. This is not the standard which we find embodied in Idaho law regarding a physician's standard of care. I.C. § 6–1012; *see Conrad v. St. Clair*, 100 Idaho 401, 405–06, 599 P.2d 292, 296–97 (1979).

As the Legislature has recognized in I.C. § 6–1012, a physician's fundamental duty is to provide care 'meet[ing] the applicable standard of health care practice of the community....' This duty is more elaborately expressed in IDJI 205, which antedates the statute. IDJI 205 speaks of a physician's duty to possess a requisite level of skill, his duty to exercise that skill with reasonable care, and his duty 'to use his best judgment in the exercise of his skill and the application of his learning.' Thus, IDJI 205 sets forth a three-pronged standard and makes it clear that the physician must satisfy each prong.

There may be a question as to whether IDJI 205 can, or should, elaborate upon

4. *See, e.g., Logan v. Greenwich Hospital Association*, 191 Conn. 282, 465 A.2d 294 (1983); *Veliz v. American Hospital, Inc.*, 414 So.2d 226 (Fla. App.1982); *Wall v. Stout*, 310 N.C. 184, 311 S.E.2d 571 (1984); *Teh Len Chu v. Fairfax Emer-gency Medical Associates, Ltd.*, 223 Va. 383, 290 S.E.2d 820 (1982); *see* G. Douthwaite, *Alexander's Jury Instructions on Medical Issues*, § 3.37 comment at 130 (2d ed. 1980).

the legislatively prescribed standard. But even if IDJI 205 is valid, the fact remains that an IDJI 205 instruction was not given in this case. Rather, the district court gave a long and tortuous instruction, focusing heavily upon the 'best judgment' test. The instruction gave elevated prominence to 'best judgment' in comparison to the other elements of a physician's duty. The instruction reasonably could have been read to establish 'best judgment' as the standard critical to this case, obscuring or subsuming the other elements.

Based upon our review of the other instructions and of the testimony elicited at trial, we conclude that the instruction was prejudicial. We therefore reverse the district court's order denying Leazer's motion for a new trial, and remand this case for a new trial. Costs to appellants. No attorney fees on appeal.

This appeal should have ended with the foregoing unanimous opinion of the Court of Appeals. As the late Justice Shepard once wrote in stone, "Justice delayed is justice denied." *Deshazer v. Tompkins*, 93 Idaho 267, 274, 460 P.2d 402, 409 (1969).

### PART III, ADDENDUM

Some years ago in an opinion I suggested the lack of wisdom on the part of a majority of the then members of this Court who had earlier argued against expanding this Court to seven members. The inefficiency and waste of judicial resources of this present two-tiered appellate system is extremely well illustrated by today's debacle. Were this Court comprised of seven justices (which of interest is the manner in which this building was designed and constructed), many of the appeals which five of us now sit to hear could be, and in my humble opinion would be, more expeditiously heard by panels of three justices. Where deemed appropriate, as would be immediately apparent, whenever a panel could not reach a unanimous conclusion, the cause could be immediately reheard by a five-member panel which could readily be accomplished by the Chief Justice making the assignments necessary. In extremely important civil and criminal cases, especially where issues of a constitutional dimension were involved, the Court could sit *en banc*, and four votes would constitute a majority. The entire legal profession hopefully will see the need for initiating appropriate action, the purpose of which should be to place seven justices behind the bench which was designed for seven, and in seven office spaces which were designed and constructed for seven justices and their three supporting personnel.

The readers of the opinions which emanate from the two Idaho appellate courts will readily see in counting raised hands, that there was for certain one additional vote to join Chief Judge Walters, Judge Swanstrom, and Judge Silak, thus constituting a majority of four, *if* our appellate system had been restructured as suggested. That one certain vote could have been any one of us who this day votes that the cause *finally* be returned to the district court for a new trial. Under this present two tiered system of appellate review there is unnecessary waste of judicial resources and, consequently, needless expenditure of public monies.

BOYLE, Justice, concurring specially.

I fully concur in the lead opinion because, in my view, Instruction No. 12 so prejudiced plaintiffs that a new trial is required.

Although plaintiffs submitted a requested instruction based on IDJI 205 prior to trial, that instruction was rejected and not given by the trial court. Instruction No. 12 was, however, given to the jury over the objection of plaintiffs and, as acknowledged by the lead opinion, it is clearly an erroneous instruction.

In *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989), we held the appropriate instruction in a medical malpractice action should be based on I.C. § 6-1012, rather than utilizing an instruction based on IDJI 205. In the instant appeal, because Instruction No. 12 contained the same "best judgment" language repudiated in *Robertson*, the guidance contained in *Rob-*

*ertson* is applicable and Instruction No. 12 should not have been given.

Ordinarily, the giving of such an instruction would not necessarily require reversal. I ascribe to the well-established principle that we review and consider the jury instructions as a whole and if they adequately present the issues and state the applicable law, reversible error is not committed. *Matter of Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989); *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983). Reversible error occurs only when an instruction misleads the jury or prejudices a party. *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985). When considering the impact of defense counsel's effective closing argument where the "best judgment" language of Instruction No. 12 was a central theme, it is my opinion that language prejudiced plaintiffs, requiring a new trial.

Had Instruction No. 12 not been given, or even if it had not included the "best judgment" language, I would affirm the trial court's denial of plaintiffs' motion for new trial. However, the inappropriate "best judgment" language was utilized in the instruction to the clear prejudice of the plaintiffs. Accordingly, in my view, plaintiffs are entitled to a new trial based on the erroneous instruction and on the significant effect of the defense closing argument which focused on the inapplicable "best judgment" language.

BAKES, Chief Justice, dissenting:

As the majority correctly notes, I.C. § 6–1012 sets forth the standard of care for physicians in medical malpractice cases. See *Robertson v. Richards,* 115 Idaho 628, 769 P.2d 505 (1987). I.C. § 6–1012 states in relevant part that "individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any." The majority opinion also correctly acknowledges that, where a party requests an instruction in substantially the form as given, that party cannot complain "as it would have been

invited error." *Ante* at 906, 821 P.2d at 961; *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983).

I believe that the court's Instruction No. 12 does set forth the "community standard" in I.C. § 6–1012. And to the extent that it incorporated the "best judgment" language of IDJI 205, it was the appellant who requested that language and who, at the instruction conference, advised the court that the "best judgment" language was a "correct" and "accurate" statement of the law. Therefore, if there was any error it was invited error and the appellant cannot now complain.

With regard to the Court's conclusion that, "Both IDJI 205 and the jury instruction given apparently conflict with I.C. § 6–1012," the majority's analysis of IDJI 205 and given Instruction No. 12 focuses solely on one sentence in the instruction, and not upon the preceding and following sentences which clearly and unequivocally set out the standard from I.C. § 6–1012.

IDJI 205 reads as follows:

## DUTY OF A PHYSICIAN

*A physician* or surgeon undertaking the [treatment] [care] of a patient *has a duty to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in the community in which he provided such [treatment]* [care] (should have provided such [treatment] [care]). It is further his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.
*The term "community" means that geographical area ordinarily served by the licensed or general hospital at or nearest to which such [treatment] [care] [was] [should have been] provided.* (Emphasis supplied.)

Given Instruction No. 12 reads as follows:

JURY INSTRUCTION NO. 12—In performing professional services for a patient, *a physician has the duty to have the degree of learning, skill, and quali-*

fications ordinarily possessed by reputable physicians practicing in the same community, at the same time, and under similar circumstances.

A physician has a further duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same community, at the same time, and under similar circumstances, and to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning and qualifications in an effort to accomplish the purpose for which the physician is employed.

If the physician holds himself out as a specialist in a particular field of medical, surgical, and other healing science, it also is his duty to have the knowledge, skill, and qualifications ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field, in the same community, at the same time, and under similar circumstances.

A failure to fulfill the foregoing duty or standard of care is negligence.

A physician is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful. The physician is negligent only if the error in judgment or lack of success is due to a failure to perform any of his duties defined in these instructions.

Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners in good standing in the particular field of specialization, a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.

The underlined portions of IDJI 205 and given Instruction No. 12 state the correct community standard set out in I.C. § 6–1012. The advisory committee's comment following the IDJI 205 instruction specifically cites I.C. § 6–1012 and our recent cases interpreting that section, *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962

(1980), and *Maxwell v. Women's Clinic*, 102 Idaho 53, 625 P.2d 407 (1981), support this instruction. The majority opinion seemingly overlooks the other sentences and instead focuses upon the sentence which states, "It is further his duty to use reasonable care, skill and diligence and to use his *best judgment* in the exercise of his skill and the application of his learning." It is that language, which was requested by appellant and which the trial court incorporated into the second paragraph of given Instruction 12, about which the appellant and the majority now complain in this case. However, the appellant never complained at trial.

In the trial court appellant requested the "best judgment" language in Plaintiff's Requested Instruction No. 18. At the jury instruction conference appellant told the trial court that it was a correct statement of the law. The second paragraph of given Instruction No. 12 is practically identical to the Plaintiff's Requested Instruction No. 18. Both included the "best judgment" language. The following comparison of Plaintiff's Requested Instruction No. 18 and the second paragraph of given Instruction No. 12 demonstrates that. Plaintiff's Requested Instruction No. 18 reads:

JURY INSTRUCTION NO. ___

A physician or surgeon undertaking the treatment of a patient has a duty to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in the community in which he provided such treatment or should have provided such treatment. *It is further his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.*

IDJI 205

Plaintiffs' Requested Jury Instruction No. 18.

(Emphasis supplied.)

The second paragraph of given Instruction No. 12 reads as follows:

*A physician has a further duty* to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same community, at the same time, and under similar circumstances, and *to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning and qualifications* in an effort to accomplish the purpose for which the physician is employed. (Emphasis supplied.)

Both require the physician to use his *best judgment* in the exercise of skill and the application of his learning. At the jury instruction conference the appellant, although he made it clear that he was objecting to the last two paragraphs of given Instruction No. 12, also made it clear that he was not objecting to the first four paragraphs of Instruction No. 12, which contained the "best judgment" language in the second paragraph, which was the same language which appellant had requested in Instruction No. 18.

A review of the reporter's transcript of that instruction conference confirms that the appellant was not objecting to the "best judgment" language in given Instruction No. 12. Appellant's counsel stated with regard to his objection to Instruction No. 12 the following:

My objection isn't to the entire instruction. In fact, I think that the portion of it that comes down to line 23 that says, 'the failure to fulfill the foregoing duty is negligence,' I think that is correct. It's about half way through your stack, I think. That is not the exact language of 205, IDJI 205, but it's very close. It paraphrases it, adds a few things, and I think capsulizes the law of medical negligence.

Appellant's counsel told the trial court that the portion of Instruction No. 12 "down to line 23," which is at the end of the fourth paragraph, was "correct." A copy of Instruction No. 12 is attached as Appendix A. He pointed out to the trial court that the second paragraph of Instruction No. 12 "is not the exact language of 205, IDJI 205, but it's very close. It paraphrases it, adds

a few things, and I think capsulizes the law of medical negligence."

Later on in the colloquy at the instruction conference, plaintiff appellant's counsel again approved the second paragraph of given Instruction No. 12, stating the physician must use "his or her *'best judgment'* in the skill, exercise of skill and the application of learning. *That's accurate and that does provide the exact language from IDJI 205.*"

From the foregoing it is readily apparent that the appellant requested the "best judgment" language by proposing Plaintiff's Requested Instruction No. 18, and advising the trial court at the instruction conference that the first 23 lines of Instruction No. 12, which contained the "best judgment" language in the second paragraph of given Instruction No. 12, was "correct," "capsulizes the law of medical negligence," and that it was "accurate and [it] does provide the exact language from IDJI 205." Accordingly, the "best judgment" language in Instruction No. 12, if it is error, is invited error, as the Court's opinion recognizes on page 6, when it says, "The appellant requested an instruction in substantially the form of IDJI 205 and had that instruction been given, the appellant could not now complain as it would have been invited error." *Ante* at 906, 821 P.2d at 961. Plaintiff's requested instruction was given. It is the second paragraph of given Instruction No. 12. Plaintiff-appellant should not now be heard to complain of the trial court using the "best judgment" language in Instruction No. 12. *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983).

What, then, was the plaintiff-appellant objecting to at the instruction conference with regard to the court's given Instruction No. 12? A close reading of the transcript of the jury instruction conference indicates that appellant was objecting to the language of the sixth paragraph of given Instruction No. 12, because he thought it was an inaccurate comment on the evidence. The part of that sixth paragraph, which the objection focuses on, is as follows:

Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners in good standing in the particular field of specialization, *a physician in not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.* (Emphasis supplied.)

As to that language, the appellant stated: They can argue that from the above instruction. In other words, you've already said he has to use reasonable diligence in line 11 [the second paragraph of Instruction No. 12] and his or her *best judgment* in the skill, exercise of skill and the application of learning. *That's accurate and that does provide the exact language from IDJI 205.* It's the same sentence as 'it is further to use his duty to use reasonable care, skill and diligence and to use his best judgment in the exercise of his skill and the application of his learning.' [Plaintiff's Requested Instruction No. 18.] So you have already advised on it. Counsel can comment and fair comment will include the comments to the effect of what comes from line 23 down.

Moreover, *the remainder of the paragraph isn't applicable to this case in that there has been no testimony that there is, quote 'more than one recognized method of diagnosis and/or treatment.'* All the surgeons, all the experts have agreed as to diagnostic testing or what is available and what the treatment should be.

There might be a divergence of opinion as to when treatment and when diagnosis should be done, but there is no divergence of opinion as to what should be done. So in that respect, it is also simply surplusage.

That is really my only objection to the ones that the court is now going to give. (Emphasis supplied.)

A careful reading of the objection indicates that the plaintiff-appellant was not objecting to the use of the "best judgment" language *per se*, because plaintiff's counsel stated, "In other words, you've already said he has to use reasonable diligence in line 11 [which was paragraph 2 of given Instruction No. 12] and his or her *best judgment* in the skill, exercise of skill and the application of learning. *That's accurate and that does provide the exact language from IDJI 205.*" (Emphasis supplied.) However, reading on, it becomes apparent that plaintiff-appellant's objection to the last paragraph of given Instruction No. 12 was a claim essentially that the last paragraph was an inaccurate comment on the evidence. After stating that the court had already instructed in paragraph 2 of given Instruction No. 12 on the "best judgment" standard, plaintiff-appellant's counsel stated:

So you have already advised on it. Counsel can comment and fair comment will include comments to the effect of what comes from line 23 down [paragraphs 5 and 6 of given Instruction No. 12].

Moreover, the remainder of the paragraph isn't applicable to this case in that there has been no testimony that there is, quote 'more than one recognized method of diagnosis and/or treatment.'

While the rationale for plaintiff's objection to Instruction No. 12 is not entirely clear, a fair review of the plaintiff's counsel's entire statement at the jury instruction conference is that he had no objection to the first four paragraphs of given Instruction No. 12. Plaintiff recognized that the second paragraph of Instruction No. 12, which included the "best judgment" language, was "very close" to Plaintiff's Requested Instruction No. 18 and IDJI 205, and that the second paragraph was "correct," "accurate," and "capsulizes the law of medical negligence." However, plaintiff's counsel was objecting to the sixth paragraph of given Instruction No. 12 on the ground that the trial court had already once instructed the jury using the "best judgment" language in paragraph 2, and that the sixth paragraph's statement about using the "best judgment" in selecting between alternate methods of diagnosis or treatment was not supported by the testimony and was an inaccurate comment on the evi-

dence. Plaintiff-appellant's counsel admitted that, "Counsel can comment and fair comment will include comments to the effect of what comes from line 23 down [the fifth and sixth paragraphs of given Instruction No. 12]." But he objected to the court instructing about alternate methods of diagnosis.

In conclusion, given Instruction No. 12 correctly instructed the jury that a physician must "have" the degree of learning possessed by reputable physicians in the "same community." Paragraph 2 of given Instruction No. 12 instructed the jury that a physician has a further duty to "use" the care and skill ordinarily exercised "in the same community," and to use reasonable diligence and "best judgment" in the exercise of that skill to accomplish the purpose for which the physician is employed. Paragraph 3 of Instruction No. 12 told the jury that if the physician held himself out as a specialist he had the duty to use the skill ordinarily used by specialists in the "same community." Those first three paragraphs of Instruction No. 12 instruct the jury on the community standard of care set out in I.C. § 6–1012, as required by *Robertson v. Richards, supra.*

If there was any error by including the "best judgment" language in Instruction No. 12, it was invited by the plaintiff-appellant who requested that language in Plaintiff's Requested Instruction No. 18, and who advised the trial court at the jury instruction conference that he had no objection to the best judgment language in paragraph 2 of Instruction No. 12. He stated that the language was "correct," "accurate" and "capsulizes the law of medical negligence." We should not reverse because of the inclusion of the "best judgment" language in Instruction No. 12. *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983).

## APPENDIX A

### JURY INSTRUCTIONS

### INSTRUCTION NO. 12

In performing professional services for a patient, a physician has the duty to have the degree of learning, skill, and qualifications ordinarily possessed by reputable physicians practicing in the same community, at the same time, and under similar circumstances.

A physician has a further duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same community, at the same time, and under similar circumstances, and to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning and qualifications in an effort to accomplish the purpose for which the physician is employed.

If the physician holds himself out as a specialist in a particular field of medical, surgical, or other healing science, it also is his duty to have the knowledge, skill, and qualifications ordinarily possessed, and to use the care and skill ordinarily used, by reputable specialists practicing in the same field, in the same community, at the same time, and under similar circumstances.

A failure to fulfill the foregoing duty or standard of care is negligence.

A physician is not necessarily negligent because he errs in judgment or because his efforts prove unsuccessful. The physician is negligent only if the error in judgment or lack of success is due to a failure to perform any of his duties defined in these instructions.

Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners in good standing in the particular field of specialization, a physician is not negligent if, in exercising his best judgment, he selects one of the approved methods which later turns out to be a wrong selection or one not favored by certain other practitioners.